**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-349

SAFE STREETS ALLIANCE, PHILLIS WINDY HOPE REILLY, and MICHAEL P. REILLY,

        Plaintiffs,

    v.

ALTERNATIVE HOLISTIC HEALING, LLC, d/b/a Rocky Mountain Organic; JOSEPH R. LICATA; JASON M. LICATA; 6480 PICKNEY, LLC; PARKER WALTON; CAMP FEEL GOOD, LLC; ROGER GUZMAN; BLACKHAWK DEVELOPMENT CORPORATION; WASHINGTON INTERNATIONAL INSURANCE CO.; DAVID L. PATCH; PATCH CONSTRUCTION, LLC; JOHN DOE 1; JOHN W. HICKENLOOPER, JR., in his official capacity as Governor of Colorado; BARBARA J. BROHL, in her official capacity as Executive Director of the Colorado Department of Revenue; W. LEWIS KOSKI, in his official capacity as Director of the Colorado Marijuana Enforcement Division; PUEBLO COUNTY COMMISSION; and PUEBLO COUNTY LIQUOR & MARIJUANA LICENSING BOARD,

        Defendants.

_____

**COMPLAINT**

_____

Plaintiffs the Safe Streets Alliance ("Safe Streets"), Phillis Windy Hope Reilly, and Michael P. Reilly file this suit to vindicate the federal laws prohibiting the cultivation and sale of recreational marijuana and their rights under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The Reillys are Colorado property owners who have been injured by a conspiracy to cultivate recreational marijuana near their land, and they are members of Safe Streets.  Plaintiffs seek redress under RICO, which requires those who engage in racketeering activity—including the commercial production of marijuana—to pay those they injure treble damages, costs, and attorneys' fees.  Plaintiffs also seek an injunction under RICO directing the marijuana operations affecting their land to stop violating the federal drug laws.  In addition to their RICO claims, Plaintiffs are also suing the state and local officials who are facilitating and encouraging Colorado's recreational marijuana trade, including the racketeering activity that is injuring their property, through a licensing regime that purports to authorize federal drug crimes. Because state and local government actions that promote the marijuana industry directly conflict with the federal Controlled Substances Act ("CSA"), those actions are preempted under the Supremacy Clause of the United States Constitution and must be set aside.

## I.
## INTRODUCTION

1.      It is a bedrock principle of the United States Constitution that federal law is the supreme law of the land.  State laws that are flatly inconsistent with constitutionally authorized federal law have no force or effect.  On the issue of recreational marijuana, federal law is clear: it is a felony under the Controlled Substances Act of 1970 ("CSA") to deal in marijuana.  Despite the express federal prohibition on marijuana, Colorado and many of its local jurisdictions have enacted laws, ordinances, and regulations designed to promote the growth of a billion dollar

commercial marijuana industry.  Yet notwithstanding that recreational  marijuana is now "legal" in Colorado, the drug's cultivation, sale, and possession remain serious federal offenses in Colorado, just as they are everywhere else in the United States.  Indeed, those associated with Colorado's largest-scale marijuana producers risk being sent to federal prison for the rest of their lives.  The people of Colorado are free to advocate for a change in this federal criminal prohibition, but they must do so through their elected representatives in Congress.  Under our federal system, Congress alone can authorize revision of federal laws prohibiting the commercial trade in recreational marijuana.

2.      Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal marijuana laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into Colorado's commercial marijuana industry.  But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially-enforceable rights under federal law.  The Department of Justice can no more amend a federal statute than can the State of Colorado, and marijuana remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970.

3.      Marijuana businesses make bad neighbors.  They emit pungent, foul odors, attract undesirable visitors, increase criminal activity, increase traffic, and drive down property values.  Safe Streets is a nonprofit organization devoted to reducing crime and illegal drug dealing, and the Reillys are property owners who have suffered injuries caused by the operations of a nearby marijuana business.  Together, they are filing this suit to vindicate their federal rights under RICO, 18 U.S.C. §§ 1961 et seq., the CSA, 21 U.S.C. §§ 801 et seq., and the Supremacy Clause.

4.      Dealing in marijuana is racketeering activity under RICO, and those who engage in a pattern of racketeering activity through a corporation or other enterprise are liable for three times the economic harm they cause plus costs and attorneys' fees.  Those who conspire with racketeers by agreeing to assist them are likewise liable.  RICO also gives federal courts the power to order racketeering enterprises and their coconspirators to cease their unlawful operations.  Accordingly, the Reillys ask this Court to award them the damages, costs, and fees to which they are entitled, and both Plaintiffs request that the Court order the RICO Defendants to cease their open and notorious violation of federal law.

5.      Furthermore, the CSA preempts the practice of state and local officials in Colorado of issuing licenses to operate recreational marijuana businesses.  Those licenses not only purport to authorize but also affirmatively assist the criminal conduct of those who receive them by making it easier for license holders to attract investors and customers.  Recreational marijuana business licensing directly conflicts with and poses a major obstacle to federal law's goal of reducing marijuana trafficking and possession through an almost total prohibition on the drug's cultivation and distribution.  Accordingly, Plaintiffs ask this Court to order the named state and local governmental defendants to withdraw the recreational marijuana licenses they have issued so far and not to issue any additional such licenses in the future.

## II.
## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.  This Court has subject matter jurisdiction over Plaintiffs' federal preemption claims under 28 U.S.C. § 1331, and the Plaintiffs seek remedies for their federal preemption claims under 28 U.S.C. §§ 1651, 2201, and 2202.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because most of the Defendants reside in Colorado and a substantial portion of the events giving rise to this suit occurred in Colorado.  Venue over Plaintiffs' RICO claims is also proper under 18 U.S.C. § 1965(a) because the RICO defendants reside in Colorado and transact affairs in Colorado.

### III.
### PARTIES

8.      Plaintiff Safe Streets is a membership organization whose members are interested in law enforcement issues, particularly the enforcement of federal laws prohibiting the cultivation, distribution, and possession of marijuana.  Plaintiffs Phillis Windy Hope Reilly and Michael P. Reilly are members of Safe Streets, as are numerous other individuals and organizations throughout Colorado.  The Reillys and other Safe Streets members have suffered injuries caused by the operations of the Colorado-licensed marijuana industry.

9.      Plaintiffs Phillis Windy Hope Reilly and Michael P. Reilly are Colorado residents who own approximately 105 acres of land immediately east and adjacent to the recreational marijuana grow at 6480 Pickney Road, Rye, CO 81069.

10.      Defendant Alternative Holistic Healing, LLC, d/b/a Rocky Mountain Organic, is a Colorado corporation that has its principal place of business at 5412 Highway 119, Unit B, Black Hawk, CO 80422, where it operates a recreational marijuana cultivation facility and retail shop. It plans to operate an additional recreational marijuana cultivation facility at 6480 Pickney Road.

11.      Defendant Joseph R. Licata has a fifty percent interest in Alternative Holistic Healing and is one of its two members.  He resides at 1300 West 70th Avenue, Denver, CO 80221.

12.     Defendant Jason M. Licata has a fifty percent interest in Alternative Holistic Healing and is one of its two members.  He resides at 212 Elk Place, Black Hawk, CO 80422.

13.     Defendant 6480 Pickney, LLC owns the marijuana cultivation at 6480 Pickney Road in Rye, CO.  Defendant Parker Walton ("Walton") is the sole member, manager, and owner of 6480 Pickney, LLC.  Walton's residence and the principal office of 6480 Pickney, LLC, are located at 3275 S. Clermont Street, Denver, CO 80222.

14.     Defendant Camp Feel Good, LLC is a Colorado corporation Walton formed and that, on information and belief, Walton owns and controls.  Camp Feel Good leases Walton's land from 6480 Pickney, LLC.  Camp Feel Good's mailing address is P.O. Box 20236, Colorado City, CO 81019.

15.     Defendant Roger Guzman ("Guzman") is the President of Defendant Blackhawk Development Corporation, a Colorado corporation that owns the property at 5412 Highway 119.  Guzman's mailing address is P.O. Box 1743, Evergreen, CO 80437, and Blackhawk Development Corporation's mailing address is also P.O. Box 1743, Evergreen, CO 80437.

16.     Defendant Washington International Insurance Co. is a New Hampshire corporation that issues surety bonds on behalf of marijuana businesses in Colorado, including Alternative Holistic Healing.  Its principal place of business at 475 N. Martingale Road #850, Schaumburg, IL 60173.

17.     Defendant David L. Patch is the manager of Defendant Patch Construction, LLC, which has agreed to transport water to the marijuana grow at 6480 Pickney Road.  The principal place of business of both David Patch and Patch Construction is 17100 Highway 115, Florence, CO 81226.

18.     Defendant John Doe 1 is constructing the marijuana grow facility at 6480 Pickney

Road.  Defendants Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney,

Walton, Camp Feel Good, Guzman, Blackhawk Development Corp., Washington International

Insurance Co., David Patch, and Patch Construction Co., and John Doe 1 are hereinafter referred

to as the "RICO Defendants."

19.     Defendant John W. Hickenlooper, Jr., is the Governor of Colorado and is named

in his official capacity.  As Colorado's chief executive official, Hickenlooper is responsible for

overseeing the enforcement and administration of the state's marijuana laws. The Governor's

mailing address is 136 State Capitol, Denver, CO 80203.

20.     Defendant Barbara J. Brohl is the Executive Director of the Colorado Department

of Revenue and is named in her official capacity.  The Colorado Marijuana Enforcement

Division is a division of the state's Department of Revenue, and it promulgates regulations under

the Colorado Retail Marijuana Code.  It also issues licenses to Colorado marijuana businesses.

The Department of Revenue's principal office is located at 1375 Sherman Street, Denver, CO

80261.

21.     Defendant W. Lewis Koski is the Director of the Colorado Marijuana

Enforcement Division and is named in his official capacity.  The Marijuana Enforcement

Division's principal office is located at 455 Sherman Street, Suite 390, Denver, CO 80203.

Defendants Hickenlooper, Brohl, and Koski are hereinafter referred to as the "State Defendants."

22.     Defendant Pueblo County Commission was the local marijuana licensing

authority at the time Alternative Holistic Healing received its local license to cultivate marijuana

at 6480 Pickney Road.  Since that time, Pueblo County marijuana licensing responsibilities have

been transferred to Defendant Pueblo County Liquor and Marijuana Licensing Board.  Both

licensing authorities operate at 215 W. 10th Street, Pueblo, CO 81003.  They are hereinafter

referred to as the "Pueblo Defendants."

**IV.**
**FACTUAL ALLEGATIONS**

**Federal Law Prohibits the Production and Distribution of Recreational Marijuana**

23.     Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse

Prevention and Control Act.   84 Stat. 1236.  Among the purposes of the CSA was to reduce drug

abuse and the illegitimate traffic in controlled substances in the United States by prohibiting the

unauthorized production, distribution, or possession of controlled substances.

24.     When it passed the CSA, Congress found that "[t]he illegal importation,

manufacture, distribution, and possession and improper use of controlled substances have a

substantial and detrimental effect on the health and general welfare of the American people," 21

U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through

interstate and foreign commerce," *id.* § 801(3).  The CSA seeks to address the social and

economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade.

25.     The CSA categorizes drugs according to a series of schedules, with the most

dangerous drugs falling under Schedule I.  *See id.* § 812(b).  Schedule I drugs have "a high

potential for abuse."  *Id.* § 812(b)(1). In enacting the CSA, Congress classified marijuana as a

Schedule I drug.  *Id.* § 812(c).  Congress thus deemed marijuana to have a high potential for

abuse.  *Id.* § 812(b)(1).  By classifying marijuana as a Schedule I drug, as opposed to listing it on

a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a

7

criminal offense, with the sole exception being use of the drug as part of a Food and Drug

Administration preapproved research study.  *Id.* §§ 823(f), 841(a)(1), 844(a).

26.     The large-scale manufacture and distribution of marijuana is a serious felony

under the CSA.  A first-time offender convicted of producing or distributing 1,000 or more

marijuana plants is subject to a sentence of 10 years to life imprisonment.  *Id.* § 841(b)(1)(A).

Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40

years imprisonment.  *Id.* § 841(b)(1)(B).  The cultivation and sale of smaller amounts of

marijuana is punishable by maximum sentences that can be as long as 20 years.  *See id.*

§ 841(b)(1)(C), (D).  The CSA also criminalizes the possession of marijuana.  Unless otherwise

authorized by federal law, possession of marijuana by a first-time offender is punishable by up to

1 year of imprisonment.  *Id.* § 844(a).

27.     In addition to its prohibitions on cultivation, sale, and possession of marijuana,

the CSA also forbids a wide range of other activities connected with the operations of a

marijuana business.  Thus, it is a crime to possess "any equipment, chemical, product, or

material" with the intention of using it to manufacture marijuana, *id.* § 843(a)(6), or to distribute

any such material with the knowledge that it will be used to manufacture marijuana, *id.*

§ 843(a)(7).  The CSA bars the use a telephone, email, mail, or any other "communication

facility" in furtherance of the manufacture or sale of marijuana, *id.* § 843(b), and it is a federal

crime to use the Internet to advertise the sale of marijuana, *id.* § 843(c)(2)(A).  Reinvesting the

proceeds from marijuana operations is also a crime, *id.* § 854(a), as is knowingly facilitating a

financial transaction involving funds derived from manufacturing and selling marijuana, 18

U.S.C. §§ 1956, 1957, 1960.  It is also a crime to knowingly lease, rent, maintain, manage, or

control a place where marijuana is manufactured or sold.  21 U.S.C. § 856.  Leading a group of five or more people who commit a continuing series of federal marijuana crimes is an especially serious offense.  *Id.* § 848.  And attempting or conspiring to commit most of those crimes is also a criminal offense.  *See id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a).

28.     These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear: marijuana is a dangerous drug that is banned throughout the United States.  And because RICO defines most violations of the CSA as "racketeering activity," *see* 18 U.S.C. § 1961(1)(D), any business engaged in the commercial cultivation and sale of recreational marijuana is a criminal enterprise for purposes of federal law.  Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability that RICO imposes.  *See id.* § 1962(c), (d).

**Colorado Facilitates the Production and Distribution of Recreational Marijuana**

29.     Despite the strict federal prohibitions on virtually every aspect of the commercial marijuana business, Colorado and many of its local jurisdictions have erected a marijuana regulatory regime that purports to authorize and seeks to regulate, tax, and promote those federal crimes.

30.     In 2012, Colorado voters approved Amendment 64, an amendment to the state constitution that legalizes recreational (sometimes called "retail") marijuana under Colorado law.  Amendment 64 declares it to be "not unlawful" to possess, use, display, purchase, transport, grow, or process marijuana for personal use in compliance with the State's recreational marijuana regulatory regime.  COLO. CONST. art. XVIII, § 16(3).  It also says that it is "not unlawful" for a business to manufacture, possess, purchase, cultivate, harvest, process, package,

transport, display, or possess marijuana for sale so long as the business complies with state and local recreational marijuana statutes and regulations.  *Id.* § 16(4).

31.     To give effect to and further the goals of Amendment 64, the Colorado General Assembly passed the Colorado Retail Marijuana Code.  COLO. REV. STAT. § 12-43.4-101 et seq. The Retail Marijuana Code purports to expressly authorize the cultivation, distribution, and possession of marijuana for recreational use.  Thus, it speaks of licensees "authorized, to cultivate, manufacture, distribute, sell, or test retail marijuana and retail marijuana products," *id.* § 12-43.4-103(4), says that "[a] retail marijuana store may cultivate its own retail marijuana if it obtains a retail marijuana cultivation facility license," *id.* § 12-43.4-402(1)(b), and specifies the circumstances under which "[a] licensed retail marijuana store may . . . sell retail marijuana, retail marijuana products, [and] marijuana accessories," *id.* § 12-43.402(7)(a).

32.     Numerous other provisions of the Retail Marijuana Code contain similar statements purporting to authorize violations of the CSA.  *See, e.g.*, *id.* § 12-43.4-304(1) ("A license applicant is prohibited from operating a licensed retail marijuana business without state and local jurisdiction approval."); *id.* § 12-43.4-402(1)(c)(II) ("A retail marijuana store or another retail marijuana cultivation facility may sell no more than thirty percent of its total on-hand inventory to another Colorado licensed retail marijuana establishment."); *id.* § 12-43.402(2)(b) (specifying when "[a] retail marijuana store licensee may transact with a retail marijuana products manufacturing licensee for the purchase of retail marijuana"); *id.* § 12-43.4-402(8) (describing "where an automatic dispensing machine that contains retail marijuana or retail marijuana products may be located"); *id.* § 12-43.4-901(5)(a) ("[N]o person shall form a business . . . with the purpose or intent . . . of transporting, cultivating, processing, transferring,

10

or distributing marijuana or marijuana products without prior approval of the state licensing authority and the local jurisdiction.").

33.     The Retail Marijuana Code charges the Department of Revenue's Marijuana Enforcement Division ("MED") with issuing state licenses "for the cultivation, manufacture, distribution, sale, and testing of retail marijuana." *Id.* § 12-43.4-202(2)(a).  In implementing the state's marijuana licensing regime and other marijuana regulations, MED has described its mission to include creating "collaborative partnerships with stakeholders that establish public trust and value in the agency."  A 2014 MED-commissioned report says that the agency seeks "proper control and regulation of state-level marijuana production" by "design[ing] the regulatory framework surrounding the control and pricing measures necessary to maintain an orderly market."  The agency's overarching goal is thus to authorize, facilitate, and promote Colorado's commercial recreational marijuana industry.

34.     Under the Retail Marijuana Code, businesses may only cultivate and distribute marijuana if they obtain both state and local licenses authorizing them to do so.  COLO. REV. STAT. § 12-43.4-309(2).  To enable marijuana businesses to operate, MED issues five types of state recreational marijuana licenses: (1) retail marijuana store licenses, which authorize the licensee to sell marijuana at a particular location, *id.* § 12-43.4-402(1); (2) retail marijuana cultivation facility licenses, which authorize the licensee to cultivate marijuana at a particular location, *id.* § 12-43.4-403(1); (3) retail marijuana products manufacturing licenses, which authorize the licensee to produce marijuana-infused products for human consumption at a particular location, *id.* § 12-43.4-404(1); (4) retail marijuana testing facility licenses, which authorize licensees to perform testing and research on retail marijuana, *id.* § 12-43.4-405(1); and

(5) occupational licenses for owners, managers, operators, employees, contractors, and other support staff associated with licensed marijuana businesses, *see id.* § 12-43.4-401(1)(e).

36.     When MED issues a recreational marijuana business license, it provides the business with a physical certificate that includes in large font the following text: "State of Colorado, Department of Revenue, Marijuana Enforcement Division, Retail Marijuana Conditional License."  Under the Retail Marijuana Code, licensees must "conspicuously place the license at all times on the licensed premises."  *Id.* § 12-43.4-309(8).  The prominent display of these licenses lends the State's name and credibility to the licensee, thus functioning as a state endorsement that encourages others to do business with it.

36.     The Retail Marijuana Code requires marijuana occupational licensees to wear state-issued badges while working in "limited-access areas"—anywhere that marijuana is grown, cultivated, stored, weighed, packaged, sold, or processed for sale.  *Id.* § 12-43.4-901(3)(a); *see id.* § 12-43.4-105 (defining "limited access area").  These state-issued badges are at all times the property of state licensing authorities.  1 COLO. CODE REGS. 212-R233(C).  Like the physical licenses marijuana businesses must display, the occupational licensee badges encourage potential marijuana investors and customers by prominently signaling the State's endorsement of the licensee.

37.     To obtain licenses, the owners, officers, managers, and employees of businesses that seek to participate in the state-approved recreational marijuana industry must pass criminal history background checks, COLO. REV. STAT. § 12-43.4-202(3)(a)(III), and MED can deny licenses to applicants deemed to lack "good moral character," *id.* § 12-43.4-306(1)(b)–(d), (g). These background checks promote investment in the recreational marijuana industry by assuring

potential investors that those associated with licensed marijuana businesses do not have extensive criminal records.  For similar reasons, the mandated background checks encourage the consumption of recreational marijuana by signaling to potential customers that the State has investigated and approved the licensed businesses.

38.     The State's recreational marijuana licensing regime also encourages the growth of the marijuana industry by prohibiting false advertising, *id.* § 12-43.4-901(4)(b), requiring producers of marijuana-infused products to satisfy certain sanitary standards, *id.* §§ 12-43.4-202(3)(a)(IV) & (XI), 12-43.4-404(3), and mandating the installation of security and surveillance equipment on licensed premises, *id.* § 12-43.4-202(3)(a)(V).  Like the state background checks, these regulatory requirements assure customers of the safety of the premises and products sold by licensees.  The result of this state oversight is a larger volume of sales for the recreational marijuana industry and easier access to investment dollars.  Indeed, a 2014 MED-commissioned report acknowledges that "legalization and commercial sale of marijuana" could increase consumption of the drug in part by "provid[ing] a more reliable and safer product than the black market."

39.     The Retail Marijuana Code also promotes the cultivation, distribution, and consumption of marijuana by expressly applying the State's antitrust laws to recreational marijuana businesses.  *See id.* § 12-43.4-901(4)(i).  Antitrust laws promote market competition, thus reducing the price and increasing the quantity and quality of products sold.  The purpose and effect of extending these laws to the marijuana industry is to increase the total amount of marijuana cultivated, sold, and consumed.

40.     Other provisions of the Retail Marijuana Code allow MED to limit production and the number of licenses it issues but require it to consider "the total current anticipated demand for retail marijuana and retail marijuana products in Colorado," *id.* § 12-43.4-202(4)(b)(II)(A), and "the reasonable availability of new licenses after a limit is established," *id.* § 12-43.4-202(4)(b)(I)(A).  Those considerations show that the overall aim of the state's licensing regime is to facilitate and promote the cultivation and sale of marijuana.

41.     MED also oversees a "responsible vendor" program under which licensed recreational marijuana businesses receive the favored designation of "responsible vendor" by sending their employees to certain MED-approved classes.  *See id.* §§ 12-43.3-1101, 1102.  This status entitles marijuana businesses to favorable treatment from state and local regulators.  *Id.* § 12-43.3-1101(3); *see* 1 COLO. CODE REGS. 212-2-R407.  Colorado lends its name and credibility to the marijuana businesses it designates as "responsible," thus promoting investment and sales for the businesses that enjoy this special state status.

42.     Further confirming that its overarching marijuana policy is to promote and facilitate violations of the CSA, the state recently announced that it will reinvest a portion of its recreational marijuana taxes in a splashy "Good to Know" marketing campaign that seeks to destigmatize marijuana and promote its use by out-of-state visitors.  In one radio ad paid for by the Colorado Department of Public Health and Environment, the announcer says that "now that marijuana's legal here, we've all got a few things to know.  But instead of telling you what you can't do, we're going to tell you what you can do too."  The announcer then rhythmically recites a poorly constructed poem over banjo and tambourine music:  "If you choose to use, don't drive high,/ Instead, just walk, or skip, or catch a ride./ . . . And whatever you get here can't leave our

state,/ so stick around awhile, you'll find this place is pretty great." These verses and the State's other marketing efforts are a transparent attempt to promote the commercial recreational marijuana industry.

43.    MED has issued hundreds of recreational marijuana business and occupational licenses, and each of these licenses authorizes and facilitates the commission of federal drug crimes. In a recent interview, Defendant Brohl summed up the purpose of these licensing efforts by stating that her "goal is to look at the overall market" and ensure that "the overall market ha[s] sufficient supply to meet the demand."

44.    Since enactment of Amendment 64, the marijuana industry has experienced explosive growth in Colorado, and this growth would not have been possible without the Sate Defendants' implementation of laws that authorize, facilitate, and assist the industry. Department of Justice enforcement guidance makes clear that non-enforcement of the CSA by the Executive Branch depends on the "states and local governments that have enacted laws authorizing marijuana-related conduct . . . implement[ing] strong and effective regulatory and enforcement systems." Thus, Colorado's marijuana laws and MED's implementation of those laws are key components of the Colorado marijuana industry's success.

45.    Among Amendment 64's stated aims is to "enhanc[e] revenue for public purposes." COLO. CONST. art. XVIII, § 16(1)(a). To that end, recreational marijuana sales are subject to a ten percent state recreational marijuana sales tax, COLO. REV. STAT. § 39-28.8-202, a fifteen percent state excise tax, *id.* § 39-28.8-302(1)(a), as well as the state's ordinary 2.9% sales tax. Colorado also enriches itself from the recreational marijuana industry by charging licensees numerous hefty permitting fees.

15

46.     Predictably, the State Defendants' efforts to promote the recreational marijuana industry have yielded substantial revenues for the state.  MED records indicate that in December 2014 alone, Colorado received approximately $6.4 million in sales taxes from the recreational marijuana industry, along with an additional $510,790 in license and application fees.  The state is thus enriching itself by systematically authorizing, facilitating, and promoting serious federal drug crimes.

47.     Defendant Hickenlooper recently summarized Colorado's efforts to enrich itself by supporting the recreational marijuana industry, explaining that the state has implemented "robust regulations that allow the industry to develop and prosper."  Through those regulations, the State has facilitated the emergence of a billion dollar industry built upon the brazen commission of federal drug crimes.

### The Pueblo Defendants Facilitate the Production and Distribution of Recreational Marijuana

48.     Alternative Holistic Healing obtained its local license to cultivate recreational marijuana at 6480 Pickney Road from the Pueblo County Commission, which at the time was responsible for local marijuana licensing in Pueblo County, Colorado.  Like MED, the Pueblo County Commission's practice was to regularly issue licenses that purport to authorize businesses to cultivate, produce, and sell recreational marijuana and marijuana-infused products. The Pueblo County Commission's recreational marijuana licensing responsibilities were recently transferred to Defendant Pueblo County Liquor and Marijuana Licensing Board, but this does not represent a meaningful change in overall recreational marijuana licensing policy for Pueblo County.

49.     The Pueblo marijuana licensing authority may deny a recreational marijuana business license based on the results of an investigation into "the character and background of the proposed licensee, its owners, officers, directors, agents, servants and/or employees and the sources of its financial investment."  PUEBLO COUNTY CODE § 5.12.070(D).  Recreational marijuana business licenses issued by the Pueblo licensing authority thus encourage the marijuana industry's potential investors and customers by signaling that county officials have investigated the backgrounds of those associated with the licensee and that the County licensing authority endorses the licensee's activities.

50.     Like the Colorado Retail Marijuana Code, the Pueblo County Code expressly contemplates that county licenses authorize license holders to participate in the commercial marijuana industry.  Thus, a "licensed premises" is defined as the location where "the licensee is authorized to cultivate, manufacture, distribute, test, or sell marijuana."  *Id.* § 5.12.040(7); *see also id.* § 5.12.040(21) (referring to facilities where "the licensee is authorized to grow and cultivate marijuana"); *id.* § 5.12.140(D) ("It is unlawful and a violation of this Chapter for a Marijuana Establishment to operate until it has been licensed under this Chapter by the Local Licensing Authority and also licensed by the State Licensing Authority pursuant to the Colorado Marijuana Code."); *id.* § 5.12.180 ("Any person twenty-one years of age or older is hereby authorized to manufacture, possess, distribute, sell or purchase marijuana accessories in conformance with Section 16 of Article XVIII of the Colorado Constitution, provided they meet all applicable state or local laws.").

51.     Pueblo County has enjoyed substantial tax revenue thanks to its efforts to authorize and facilitate the operations of the commercial marijuana industry.  From January

through October 2014, the county reported that it had received $430,000 in tax revenue from its 3.5% sales tax on recreational marijuana. And in 2013, the county received more than $90,000 in revenue from recreational marijuana license and application fees. The county has thus enriched itself by promoting and facilitating violations of the CSA.

52.     Indeed, Joan Armstrong, a Pueblo County official involved in marijuana licensing decisions, has described the rise of the marijuana industry in the county as "a huge economic boon." And Pueblo County Commissioner Sal Pace has expressed his hope and ambition that Pueblo County will eventually have the "lion's share of the state's grow facilities." Such statements underscore that, like Colorado, Pueblo County has sought to enrich itself by purporting to authorize and seeking to assist the recreational marijuana industry.

53.     By issuing licenses to operate recreational marijuana businesses, the Pueblo Defendants purport to authorize conduct that the CSA prohibits. In addition to authorizing federal crimes, the Pueblo Defendants' practice of issuing recreational marijuana licenses facilitates and promotes those crimes by assisting potential marijuana investors and customers in their search for marijuana businesses.

### The RICO Defendants Operate Licensed Racketeering Enterprises that Cultivate and Distribute Recreational Marijuana

54.     On July 1, 2014, Defendant Walton paid $44,900 for the 40.72-acre parcel located at 6480 Pickney Road, Rye, CO. Within two months, Walton had formed Defendant 6480 Pickney, LLC, and transferred title to the land to that entity. 6480 Pickney then leased the land to Defendant Camp Feel Good, LLC, another entity that Walton formed and that, on information and belief, Walton still owns and controls.

55.     Walton is the owner and sole member and manager of 6480 Pickney, LLC, and

Camp Feel Good, LLC, and in those capacities he leased the land to Alternative Holistic Healing,

LLC, which grows and sells recreational marijuana under the name Rocky Mountain Organics at

5412 Highway 119, Black Hawk, CO.  Alternative Holistic Healing is jointly owned and

controlled by Defendants Joseph Licata and Jason Licata, each of whom has a fifty percent

interest in the company.

56.     In leasing the land, Alternative Holistic Healing, Joseph Licata, Jason Licata,

Walton, 6480 Pickney, and Camp Feel Good all understood and agreed that the property would

be used to grow recreational marijuana to be sold at Alternative Holistic Healing's Black Hawk

store, among other places.  Leasing or maintaining property for the cultivation of marijuana is a

crime under 21 U.S.C. § 856 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

57.     Alternative Holistic Healing, Joseph Licata, Jason Licata, Walton, 6480 Pickney,

and Camp Feel Good also conspired and agreed to work together to develop the property at 6480

Pickney Road for marijuana cultivation and to contribute to the ongoing violations of the CSA

inherent in those operations.  Entering into such an agreement is conspiracy under 21 U.S.C.

§ 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

58.     To enable Alternative Holistic Healing to grow marijuana on the land, Walton and

6480 Pickney agreed to construct and are currently constructing facilities specially designed for

marijuana cultivation.  They agreed to construct a building with lighting, water, and security

systems custom built for growing marijuana.  On information and belief, the building or some

other structure on the land will accommodate the processing and drying of marijuana.  The

building under construction at 6480 Pickney Road is planned to be 3,670 square feet, and Joseph

Licata told the Pueblo County Commission that it would house as many as 600 marijuana plants at one time.  Possessing or constructing these facilities, equipment, products, and materials for the cultivation and processing of marijuana violates 21 U.S.C. § 843(a)(6) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

59.     To undertake the construction of the building, Alternative Holistic Healing and Walton hired John Doe 1.  In light of the many specialized features that are necessary to make a building suitable for growing marijuana, John Doe 1 is clearly aware of the purpose of this building.  In nevertheless associating himself with 6480 Pickney and agreeing to assist it with the construction, John Doe 1 conspired with the other RICO Defendants to violate the CSA.  Such conspiracy violates 21 U.S.C. § 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

60.     On information and belief, Alternative Holistic Healing, Joseph Licata, Jason Licata, Walton, 6480 Pickney, and Camp Feel Good used the telephone, email, or other communication facilities to take steps in furtherance of their efforts to unlawfully lease the 6480 Pickney Road property and develop it.  Such uses of communication facilities violates 21 U.S.C. § 843(b) and are racketeering activity under 18 U.S.C. § 1961(1)(D).

61.     The recreational marijuana cultivation at 6480 Pickney Road will require far more water than is available on site, and to solve that problem Walton recruited Defendants David L. Patch and Patch Construction to haul water from Florence to the grow.  Included in Alternative Holistic Healing's application for a local license is the following statement, which David L. Patch signed for Patch Construction: "I have an agreement to haul water from the City of Florence to 6480 Pickney Road, Rye, CO."  By signing this statement to help Alternative Holistic Healing obtain a local license, David Patch and Patch Construction adopted the

overarching goal of the conspiracy: to cultivate recreational marijuana at 6480 Pickney Road and sell it off site through an ongoing pattern of racketeering activity.  By knowingly agreeing to assist and promote the efforts of the conspiracy, David Patch and Patch Construction violated 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

62.     Alternative Holistic Healing applied for both state and local licenses to cultivate marijuana at 6480 Pickney Road.  On October 1, 2014, MED granted Alternative Holistic Healing a state license, conditioned on it also obtaining a local license.  On December 29, 2014, the Pueblo County Commission voted 2 to 1 to grant Alternative Holistic Healing a local license. In voting to deny Alternative Holistic Healing's local license application, Pueblo County Commissioner Terry Hart said that he believed that a marijuana grow would interfere with the use and enjoyment of land in the surrounding area.

63.     In agreeing to develop and assist in the operations of the marijuana cultivation facilities at 6480 Pickney Road, Walton, 6480 Pickney, Camp Feel Good, David Patch, and Patch Construction became part of a larger drug conspiracy.  Through Alternative Holistic Healing, Joseph Licata and Jason Licata operate a store in Black Hawk, Colorado, that grows and sells recreational marijuana.  The Black Hawk operations violate numerous provisions of the CSA: maintaining the premises violates 21 U.S.C. § 856, growing, processing, and selling marijuana there violates 21 U.S.C. § 841(a), and maintaining the necessary chemicals, equipment, and materials violates 21 U.S.C. § 843(a)(6).  On information and belief, Alternative Holistic Healing, Joseph Licata, and Jason Licata have used the telephone, email and other communications facilities in furtherance of their drug conspiracy, thus violating 21 U.S.C.

21

§ 843(b).  Each of those federal drug crimes is racketeering activity under 18 U.S.C.

§ 1961(1)(D).

64.     Alternative Holistic Healing's Black Hawk store is located at 5412 Highway 119,

and this property is owned by Defendant Blackhawk Development Corp., which is controlled by

its President, Defendant Roger Guzman.  Alternative Holistic Healing, Joseph Licata, Jason

Licata, Blackhawk Development Corp., and Guzman entered into a lease under which it was

expressly agreed that Alternative Holistic Healing would use the property to sell marijuana.

Blackhawk Development Corp. and Guzman thus violated 21 U.S.C. § 856 and conspired to

violate the CSA with Alternative Holistic Healing, Joseph Licata, and Jason Licata in violation

of 21 U.S.C. § 846.

65.     Alternative Holistic Healing advertises marijuana for sale over the Internet in

violation of 21 U.S.C. § 843(c)(2)(A), and this is racketeering activity under 18 U.S.C.

§ 1961(1)(D).  A recent posting to Facebook by Alternative Holistic Healing, operating under the

name Rocky Mountain Organics, announced a sale during which customers who mentioned the

marijuana strain "Jack Flash" would receive five dollars off their next purchase.  Another of the

entity's Facebook posts features a photograph of marijuana buds under what is presumably the

name of the pictured marijuana strain: "Lemon Skunk."  Elsewhere on the Facebook page,

Joseph Licata, posing as a customer, posted the following comment: "Been there and great prices

and really great product."  Licata or someone else affiliated with the entity then replied: "Thank

you! We try to have a variety of strains and edibles, to cater to your individual needs."

66.     On May 27, 2014, Defendant Washington International Insurance Co. issued a

$6,000 surety bond on behalf of Alternative Holistic Healing, guaranteeing its tax payments to

the State of Colorado as contemplated by COLO. REV. STAT. § 12-43.4-303. The bond expressly states that Alternative Holistic Healing applied "for a license to act as a retail marijuana cultivation facility in the State of Colorado." Washington International Insurance Co. knew and intended for Alternative Holistic Healing to use this surety bond to obtain recreational marijuana licenses as part of its efforts to operate a marijuana business in violation of the CSA. By issuing the surety bond with the intent to further Alternative Holistic Healing's federal drug crimes, Washington International Insurance Co. conspired with Alternative Holistic Healing, Joseph Licata, and Jason Licata to commit crimes under the CSA in violation of 21 U.S.C. § 846. That is racketeering activity under 18 U.S.C. § 1961(1)(D).

67.     The RICO Defendants together formed an association-in-fact enterprise for the purpose of cultivating marijuana at 6480 Pickney Road and selling it at Alternative Holistic Healing's Black Hawk store, among other places. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the cultivation and distribution of marijuana that none of them could have achieved individually.

68.     All of the RICO defendants have contractual and other relationships with each other and are collaborating together to contribute to the association-in-fact enterprise's efforts to cultivate recreational marijuana at 6480 Pickney Road and thereby engage in an ongoing pattern of racketeering activity. Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney, Walton, and Camp Feel Good all participated in the agreement as part of which Alternative Holistic Healing leased the 6480 Pickney Road property for cultivating marijuana. David Patch signed a document for Patch Construction Co. that was included with Alternative Holistic Healing's application for a local license. And regardless of whether Washington

23

International Insurance Co., Blackhawk Development Corp. and Guzman know the *identities* of all of their coconspirators, they are aware that *someone* is performing the essential roles of the other RICO defendants in furtherance of the enterprise's criminal activities.

69.     On information and belief, decisions about how the property at 6480 Pickney Road is developed and used are made collectively by the Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney, and Walton, with each having an important role in decisionmaking, operations, and management.

70.     Defendants Walton and 6480 Pickney play central roles in the management and operations of the association-in-fact enterprise.  Acting on behalf of the enterprise, Walton secured a water supply for growing marijuana from the City of Florence, Colorado and sent proof of that water supply to Pueblo County officials in order to support Alternative Holistic Healing's local license application.  Walton also wrote the following note, which was included with Alternative Holistic Healing's county license application: "I, Parker Walton, as the sole member and manager of 6480 Pickney LLC, allow the use of RMJ (Retail Marijuana) cultivation facility on my property at 6480 Pickney Rd. /s/ Parker Walton on behalf of 6480 Pickney LLC." The Pueblo County Commission considered Alternative Holistic Healing's license application at a December 22, 2014 hearing.  Walton spoke at the hearing in support of the application, describing himself as "the owner" of 6480 Pickney Road.  Also at the hearing, Joseph Licata referred to Walton as "the builder."  When the County Commission asked Joseph Licata questions about the planned size of the cultivation facility and the number of plants it would accommodate, he consulted Walton before answering.

71.     Alternative Holistic Healing, Joseph Licata, and Jason Licata also have important roles managing the enterprise's affairs.  Alternative Holistic Healing applied for and holds the state and local licenses that authorize cultivation of marijuana at 6480 Pickney Road.  As equal owners in Alternative Holistic Healing, Joseph Licata and Jason Licata completed and signed those applications and make decisions about Alternative Holistic Healing's finances and business strategy.

72.     Black Hawk is a mountain community, and Defendant Brohl recently stated in an interview that approximately 80 percent of marijuana sold in mountain communities is purchased by out-of-state visitors.  Thus, by supplying marijuana to a recreational store in Black Hawk, the 6480 Pickney Road marijuana grow will produce a large volume of marijuana that will move in the interstate market for illegal drugs.  Moreover, in constructing the facility, the RICO Defendants have already procured products and services through the interstate market in furtherance of the drug conspiracy.

73.     All of the RICO defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of growing and selling marijuana.  As set forth above, that goal could only be accomplished through numerous violations of the CSA.  Each such violation of the CSA is racketeering activity, and all of the RICO defendants thus knew and intended that in agreeing to assist the enterprise they would help it carry out a pattern of racketeering activity.

**The RICO Defendants' Marijuana Operations and the State and Pueblo Defendants'
Decisions To License Those Operations Injure the Reillys' Property**

74.     Plaintiffs Phillis Windy Hope Reilly and Michael P. Reilly own lots 1, 2, and 6 of the Meadows at Legacy Ranch, a development on the south side of Pickney Road.  The Reillys' lots form a contiguous parcel of approximately 105 acres of beautiful rolling pasture with

25

sweeping mountain vistas that include views of Pike's Peak.  Although the Reillys do not live on

their land, they often visit on weekends with their children to ride horses, hike, and visit with

friends in the closely-knit neighborhood.  The Reillys' property includes two agricultural

buildings.

75.     The 6480 Pickney Road marijuana grow is west and immediately adjacent to the

Reillys' property.  Although Defendant 6480 Pickney owns a 40-acre parcel, the structure is

being built in the corner of the lot, just a few feet from the Reillys' property line.  The ongoing

construction has already marred the mountain views from the Reillys' property, thus making it

less suitable for hiking and horseback riding.  The building's purpose—the manufacture of

illegal drugs—exacerbates this injury, for when the Reillys and their children visit the property

they are reminded of the racketeering enterprise next door every time they look to the west.

76.     The Meadows at Legacy Ranch is a residential development that is divided into

approximately 35-acre tracts on which residents commonly keep horses.  To maintain the

development's pleasant, residential character, covenants expressly prohibit most commercial

uses of the land.  Covenants also require that buildings be set back at least fifty feet from any lot

boundary, prohibit the keeping of pigs and other odorous animals, and generally forbid "noxious,

annoying or offensive activity."

77.     The 6480 Pickney Road marijuana grow is situated just outside the boundaries of

the Meadows at Legacy Ranch, and if it were within those boundaries it would violate numerous

covenants.  The 6480 Pickney Road marijuana grow is a large commercial structure being built

less than fifty feet from the Reillys' property.  Furthermore, growing recreational marijuana is

"noxious, annoying or offensive activity" by virtually any definition because marijuana plants

are highly odorous, and their offensive smell travels long distances.  The Meadows at Legacy Ranch adopted its covenants to protect property values and owners' enjoyment of their land.  The fact that the RICO Defendants are using the land west of the Reillys' property to do things that the Reillys and their other neighbors have covenanted not to do shows that the RICO Defendants' activities injure the Reillys' property.

78.     Terry Hart, one of the three members of the Pueblo County Commission, agreed that the 6480 Pickney Road marijuana grow would interfere with surrounding land uses and explained that he was voting against granting Alternative Holistic Healing a local license for that reason.

79.     The RICO Defendants' publicly disclosed drug conspiracy has also injured the value of the Reillys' property.  People buy lots at the Meadows at Legacy Ranch because they want to keep horses or build homes in a pleasant residential area, and the Reillys' land is less suitable for those uses due to the 6480 Pickney Road marijuana grow.  Furthermore, the large quantity of drugs at marijuana grows makes them targets for theft, and a prospective buyer of the Reillys' land would reasonably worry that the 6480 Pickney Road marijuana grow will increase crime in the area.  Prospective buyers would also worry that once it is complete the 6480 Pickney Road marijuana grow will emit pungent odors, thus further interfering with the use and enjoyment of the Reillys' land.  As a result, the 6480 Pickney Road marijuana grow has directly and proximately caused a decline in the market value of the Reillys' land.

80.     The RICO Defendants could not have located their marijuana grow operation at 6480 Pickney Road if they had not received authorization from the State and Local Defendants to do so.  Thus, the State and Local Defendants have also caused the Reillys to suffer injuries.

27

**The State Defendants' Issuance of Marijuana Licenses
Injures Other Safe Street Members**

81.     In addition to the injuries suffered by the Reillys, other Safe Streets members have also been injured by the State and Local Defendants' efforts to license and promote the commercial marijuana industry.

82.     Safe Streets members live near the MED-licensed marijuana businesses located at 2000 S. Dahlia Street, Denver, CO 80222.  Among those businesses is a recreational marijuana-infused products manufacturer that has attracted an undesirable, criminal element into the neighborhood and caused traffic congestion.  By causing those problems, MED's decision to license the recreational marijuana infused products manufacturer has substantially damaged the value of surrounding properties.

**CLAIMS FOR RELIEF**

**RICO COUNTS**

**COUNT I
Violation of 18 U.S.C. § 1962(c)
Against Alternative Holistic Healing, Joseph Licata, Jason Licata,
6480 Pickney, and Walton**

83.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

84.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity." Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney, and Walton each violated this provision of 18 U.S.C. § 1962.

85.     All of the RICO Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with each other, collaborating to develop the 6480 Pickney Road property for recreational marijuana cultivation, and agreeing to sell that marijuana at Alternative Holistic Healing's Black Hawk store.  This enterprise enables the RICO Defendants to more efficiently achieve their collective purpose.

86.     Funding, goods, and services procured by the enterprise have moved in interstate commerce and the enterprise plans to sell marijuana in interstate commerce.

87.     Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney, and Walton each has some part in directing the enterprise's affairs.  Alternative Holistic Healing, by and through its owners Joseph Licata and Jason Licata, applied for licenses to operate the recreational marijuana grow at 6480 Pickney Road, and they collectively manage the Black Hawk shop where the resulting marijuana is to be sold.  6480 Pickney owns the property on which the marijuana is to be grown, and through Walton it makes decisions about the design of the building and the enterprise's overall finances.  At the Pueblo County Commission hearing that considered Alternative Holistic Healing's application for a local license to grow recreational marijuana at 6480 Pickney, both Joseph Licata and Walton spoke on behalf of the enterprise.

88.     Alternative Holistic Healing, Joseph Licata, Jason Licata, 6480 Pickney, and Walton have each conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  They collectively entered into a lease under which 6480

29

Pickney Road will be used to commit numerous crimes under the CSA, and that lease violates 21

U.S.C. § 856.  They also conspired, in violation of 21 U.S.C. § 846, to work together with the

rest of the enterprise for the success of Alternative Holistic Healing's open-ended illegal

recreational marijuana business.  On information and belief, they used communication facilities

to enter into their lease and their drug conspiracy in violation of 21 U.S.C. § 843(b).  Alternative

Holistic Healing, Joseph Licata, and Jason Licata already possess materials, goods, and facilities

for the manufacture of marijuana in violation of 21 U.S.C. § 843(a)(6).  All of those crimes are

racketeering activity under 18 U.S.C. § 1961(1)(D).

89.     The racketeering activities of Alternative Holistic Healing, Joseph Licata, Jason

Licata, 6480 Pickney, and Walton have directly and proximately injured the Reillys' property by

interfering with their use and enjoyment of that property and diminishing its market value.

## COUNT II
### Violation of 18 U.S.C. § 1962(d)
### Against All RICO Defendants

90.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

91.     RICO creates a private right of action for "[a]ny person injured in his business or

property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C.

§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of

subsection (a), (b), or (c) of this section."

92.     The RICO Defendants, for their mutual and individual profit, agreed and

conspired to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the

purpose of cultivating recreational marijuana at 6480 Pickney Road and selling it at Alternative

Holistic Healing's store in Black Hawk.  The RICO Defendants knew that this patently unlawful

30

scheme could only be accomplished through a pattern of racketeering activity, for maintaining a premises at which marijuana is cultivated and sold, cultivating and selling marijuana, and possessing the goods and materials needed to cultivate and process marijuana are all crimes under the CSA. *See, e.g.*, 21 U.S.C. §§ 841(a), 843(a)(6), 856.

93.     Funding, goods, and services procured by Defendants in furtherance of their association-in-fact enterprise for the purpose of cultivating and selling recreational marijuana have moved in interstate commerce, and the enterprise plans to sell marijuana grown at 6480 Pickney Road in interstate commerce.

94.     The RICO Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c).  All of the RICO Defendants violated 21 U.S.C. § 846 by agreeing and conspiring to assist in the establishment of the 6480 Pickney Road marijuana grow or in the operations of Alternative Holistic Healing's recreational marijuana business.  And Alternative Holistic Healing, 6480 Pickney, LLC, and their agents entered into a real estate agreement to operate a recreational marijuana cultivation in violation of 21 U.S.C. § 856.

95.     Racketeering activities undertaken in furtherance of the RICO Defendants' conspiracy to violate 18 U.S.C. § 1962(c) have injured the Reillys' property.  Specifically, the lease and construction at 6480 Pickney Road in violation of 21 U.S.C. § 856 and the drug conspiracy of which that construction is a part directly and proximately injured the Reillys' property by interfering with their use and enjoyment of their land and diminishing its market value.

**COUNT III**
**Violation of 18 U.S.C. § 1962(c)**
**Against Joseph Licata and Jason Licata**

96.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

97.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

98.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Alternative Holistic Healing is a Colorado limited liability corporation. Thus, it is a RICO "enterprise."

99.     Joseph Licata and Jason Licata are equal owners and members of Alternative Holistic Healing and have authority to speak and sign documents on its behalf. They therefore have roles in directing its affairs.

100.    Joseph Licata and Jason Licata have each conducted or participated in the conduct of the affairs of Alternative Holistic Healing through a pattern of racketeering activity. Together, they oversee the growing, processing, and sale of recreational marijuana at Alternative Holistic Healing's Black Hawk store in violation of 21 U.S.C. § 841(a), 21 U.S.C. § 843(a)(6), and 21 U.S.C. § 856. They entered into a lease under which marijuana is to be cultivated at 6480 Pickney Road in violation of 21 U.S.C. § 856. They conspired with each other, 6480 Pickney, LLC, and Walton to violate numerous provisions of the CSA by growing recreational marijuana

and thus violated 21 U.S.C. § 846.  They advertise marijuana for sale over the Internet in violation of 21 U.S.C. § 843(c)(2)(A).  On information and belief, they have each violated 21 U.S.C. § 843(b) by using the telephone, email, or other communication facilities to take steps in furtherance of the many violations of the CSA that occur at their Black Hawk store and the 6480 Pickney Road recreational marijuana grow facility.  Each of those crimes is racketeering activity under 18 U.S.C. § 1961(1)(D), and together they represent an ongoing pattern that will continue unless this Court intervenes.

101.    Funding, goods, and services procured by Joseph Licata and Jason Licata for Alternative Holistic Healing's unlawful activities have moved in interstate commerce, and Alternative Holistic Healing sells marijuana in the interstate market for illegal drugs.

102.    The racketeering activities of Joseph Licata and Jason Licata directly and proximately injured the Reillys' property by interfering with their use and enjoyment of their land and diminishing its market value.

**COUNT IV**
**Violation of 18 U.S.C. § 1962(d)**
**Against Joseph Licata, Jason Licata, Blackhawk Development Corp., Guzman,**
**Washington International Insurance, David Patch, and Patch Construction**

103.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

104.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Joseph Licata, Jason Licata, Blackhawk Development Corp., Guzman, Washington International Insurance, David Patch, and Patch Construction agreed and conspired to violate 18 U.S.C. § 1962(c).

105.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Alternative Holistic Healing is a Colorado limited liability corporation. It is a RICO "enterprise."

106.    Funding, goods, and services procured by Defendants in furtherance of Alternative Holistic Healing's unlawful activities have moved in interstate commerce, and Alternative Holistic Healing sells marijuana in the interstate market for illegal drugs.

107.    Joseph Licata, Jason Licata, Blackhawk Development Corp., Guzman, Washington International Insurance, David Patch, and Patch Construction are each associated with Alternative Holistic Healing and agreed to help Alternative Holistic Healing establish and operate a recreational marijuana grow facility at 6480 Pickney Road and a recreational marijuana store in Black Hawk.

108.    Joseph Licata, Jason Licata, Blackhawk Development Corp., Guzman, Washington International Insurance, David Patch, and Patch Construction each understood that their collective efforts to establish and operate the recreational marijuana operations at 6480 Pickney Road and in Black Hawk could only be accomplished through a pattern of racketeering activity. Specifically, all understood and agreed that Joseph Licata and Jason Licata would violate the CSA by cultivating recreational marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation, *id.* § 843(a)(6), and maintaining the premises at 6480 Pickney Road and in Black Hawk for cultivating and selling recreational marijuana, *id.* §§ 849, 856. Each of those crimes is racketeering activity, and together they form an ongoing pattern.

109.    Racketeering activities undertaken in furtherance of the conspiracy among Joseph Licata, Jason Licata, Blackhawk Development Corp., Guzman, Washington International Insurance, David Patch, and Patch Construction to violate 18 U.S.C. § 1962(c) have injured the Reillys' property.  Specifically, the construction at 6480 Pickney Road in violation of 21 U.S.C. § 856 and the drug conspiracy of which that construction is a part directly and proximately injured the Reillys' property by interfering with their use and enjoyment of their land and diminishing its market value.

### COUNT V
### Violation of 18 U.S.C. § 1962(c)
### Against Walton

110.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

111.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

112.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity."  18 U.S.C. § 1961(4).  6480 Pickney, LLC, is a Colorado corporation.  It is a RICO "enterprise."

113.    Walton is the owner and sole member of 6480 Pickney, LLC, and thus has a role in directing its affairs.

114.    6480 Pickney, LLC owns property where a building is being constructed that will grow recreational marijuana for sale into the interstate market for illegal drugs, and materials for the building have been acquired in interstate commerce.

115.    Walton has conducted or participated in the conduct of the affairs of 6480 Pickney, LLC through a pattern of racketeering activity.  In violation of 21 U.S.C. § 856, he leased the 6480 Pickney Road property for use as a recreational marijuana cultivation facility.  And in violation of 21 U.S.C. § 846, he agreed and conspired with Alternative Holistic Healing, Joseph Licata, and Jason Licata to assist them in their ongoing violations of the CSA.  On information and belief, Walton has already acquired materials for the cultivation of marijuana in connection with the 6480 Pickney Road operations in violation of 21 U.S.C. § 843(a)(6).  On information and belief, Walton has used the telephone, email, or other communication facilities in furtherance of his other violations of the CSA, thus violating 21 U.S.C. § 843(b).  Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D) and together form a pattern.

116.    The racketeering activities of Walton directly and proximately injured the Reillys' property by interfering with their use and enjoyment of their land and diminishing its market value.

**COUNT VI**
**Violation of 18 U.S.C. § 1962(d)**
**Against Walton and John Doe 1**

117.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

118.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of

subsection (a), (b), or (c) of this section."  Walton and John Doe 1 agreed and conspired to violate 18 U.S.C. § 1962(c).

119.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity."  18 U.S.C. § 1961(4).  6480 Pickney, LLC is a Colorado corporation.  It is a RICO "enterprise."

120.    6480 Pickney, LLC owns property where a building is being constructed that will grow recreational marijuana for sale into the interstate market for illegal drugs, and materials for the building have been acquired in interstate commerce.

121.    Walton and John Doe 1 have engaged in a pattern of racketeering activity in connection with 6480 Pickney, LLC.  In violation of 21 U.S.C. § 856, Walton leased the 6480 Pickney Road property for use as a recreational marijuana cultivation facility.  And in violation of 21 U.S.C. § 846, Walton and John Doe 1 agreed and conspired with Alternative Holistic Healing, Joseph Licata, and Jason Licata to assist them in their ongoing violations of the CSA by developing the 6480 Pickney Road property for marijuana cultivation.  On information and belief, Walton has already acquired materials for the cultivation of marijuana in connection with the 6480 Pickney Road operations in violation of 21 U.S.C. § 843(a)(6).  On information and belief, both Walton and John Doe 1 have used the telephone, email, or other communication facilities in furtherance of their drug conspiracy, thus violating 21 U.S.C. § 843(b).  Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D) and together form a pattern.

122.    The racketeering activities of Walton and John Doe 1 directly and proximately injured the Reillys' property by interfering with their use and enjoyment of their land and diminishing its market value.

## PREEMPTION COUNTS

### COUNT VII
### Federal Preemption of State Marijuana Licensing
### Against State Defendants

123.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

124.    The Supremacy Clause makes the United States Constitution and constitutionally authorized federal statutes "the supreme law of the land . . . anything in the constitution or laws of any state to the contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.  Thus, where federal and state law conflict, state law is preempted and must yield.

125.    Although the CSA does not occupy the field of marijuana regulation, it says that state law is preempted where "there is a positive conflict" between the CSA and state law "so that the two cannot consistently stand together."  21 U.S.C. § 903.

126.    The CSA imposes substantial criminal penalties on those who unlawfully cultivate and commercially distribute recreational marijuana.  *See id.* § 841(b)(1).  Those penalties reflect Congress's determination that marijuana should be listed as a Schedule I drug because it has a high potential for abuse.  *See id.* § 812(b)(1), (c).  The CSA thus embodies a strong federal policy that seeks to eliminate the commercial cultivation and distribution of recreational marijuana through a complete criminal prohibition on those activities.

127.    Despite the federal criminal ban on the commercial cultivation and distribution of recreational marijuana, MED raises revenue for the State of Colorado by issuing licenses that purport to authorize, regulate, and tax federal drug crimes involving marijuana.

128.    MED's licenses also affirmatively assist and promote the commercial cultivation and distribution of recreational marijuana by functioning as a state endorsement of licensed

38

businesses and employees.  This endorsement assists potential recreational marijuana investors and customers by assuring them that licensees have been investigated and approved by the State.

129.    Thus, MED's issuance of recreational marijuana licenses directly conflicts with the CSA and poses an obstacle to the achievement of the CSA's purposes.  "[T]here is a positive conflict" between the CSA and MED's practice of issuing marijuana licenses and "the two cannot consistently stand together."  21 U.S.C. § 903.  It follows that MED's licensing regime is preempted by federal law and cannot stand.

### COUNT VIII
### Federal Preemption of Local Marijuana Licensing
### Against Pueblo Defendants

130.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

131.    The Supremacy Clause makes the United States Constitution and federal statutes "the supreme law of the land . . . anything in the constitution or laws of any state to the contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.  Thus, where federal and local law conflict, local law is preempted and must yield.

132.    Although the CSA does not occupy the field of marijuana regulation, it says that local law is preempted where "there is a positive conflict" between the CSA and local law "so that the two cannot consistently stand together."  21 U.S.C. § 903.

133.    The CSA imposes substantial criminal penalties on those who unlawfully cultivate and commercially distribute recreational marijuana.  *See id.* § 841(b)(1).  Those penalties reflect Congress's determination that marijuana should be listed as a Schedule I drug because it has a high potential for abuse.  *See id.* § 812(b)(1), (c).  The CSA thus embodies a

strong federal policy that seeks to reduce the cultivation and distribution of recreational marijuana through a complete prohibition on those activities.

134.    Despite the federal ban on the commercial cultivation and distribution of recreational marijuana, the Pueblo Defendants issue licenses that authorize those federal crimes. The Pueblo Defendants' licenses also affirmatively assist and promote the cultivation and distribution of recreational marijuana by functioning as an official endorsement of licensed recreational marijuana businesses and employees.  This endorsement assists potential recreational marijuana investors and customers by assuring them that licensees have been investigated and approved by the Pueblo Defendants.

135.    Thus, the Pueblo Defendants' issuance of marijuana licenses directly conflicts with the CSA and poses an obstacle to the achievement of the CSA's purposes.  For this reason, "there is a positive conflict" between the CSA and the Pueblo Defendants' practice of issuing marijuana licenses and "the two cannot consistently stand together."  21 U.S.C. § 903.  The Pueblo Defendants' licensing regime is thus preempted by federal law and cannot stand.

## PRAYER FOR RELIEF

136.    WHEREFORE, Plaintiffs pray for an order and judgment:

a.   Awarding the Reillys three times the damages to their property that was caused by the RICO Defendants' racketeering activities.

b.   Enjoining the RICO Defendants from continuing to engage in racketeering activities.

c.   Declaring that the State Defendants' issuance of marijuana business and occupational licenses is preempted by federal law.

d.   Vacating and setting aside the marijuana business and occupational licenses issued by the State Defendants.

e.   Enjoining the State Defendants from issuing additional marijuana business and occupational licenses.

f.   Declaring that those portions of the Colorado Constitution and the Retail Marijuana Code that purport to authorize or facilitate violations of the federal drug laws are preempted by federal law.

g.   Declaring that the Pueblo Defendants' issuance of marijuana business licenses is preempted by federal law.

h.   Vacating and setting aside the marijuana business licenses issued by the Pueblo Defendants.

i.   Enjoining the Pueblo Defendants from issuing additional marijuana business licenses.

j.   Declaring that those portions of the Pueblo County Code that purport to authorize or facilitate violations of the federal drug laws are preempted by federal law.

k.   Awarding Plaintiffs their reasonable costs, including attorneys' fees incurred in bringing this litigation.

l.   Granting such other and further relief as this Court deems just and proper.

Date:   February 19, 2015

Respectfully submitted,

s/David H. Thompson
David H. Thompson
*Counsel of Record*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

*Of Counsel*:
Charles J. Cooper
Michael W. Kirk
Howard C. Nielson, Jr.
Peter A. Patterson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)

*Counsel for Plaintiffs*