IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 1:15-cv-00349-REB-CBS

SAFE STREETS ALLIANCE,
PHILLIS WINDY HOPE REILLY, and
MICHAEL P. REILLY,

      Plaintiffs,

v.

ALTERNATIVE HOLISTIC HEALING, LLC, d/b/a Rocky Mountain Organic,
JOSEPH R. LICATA,
JASON M. LICATA,
6480 PICKNEY, LLC,
PARKER WALTON,
CAMP FEEL GOOD, LLC,
ROGER GUZMAN,
BLACKHAWK DEVELOPMENT CORPORATION,
WASHINGTON INTERNATIONAL INSURANCE CO.,
**JOHN W. HICKENLOOPER, JR., in his official capacity as Governor of Colorado,
BARBARA J. BROHL, in her official capacity as Executive Director of the
Colorado Department of Revenue,
W. LEWIS KOSKI, in his official capacity as Director of the Colorado Marijuana
Enforcement Division,
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PUEBLO, and
PUEBLO COUNTY LIQUOR & MARIJUANA LICENSING BOARD**,

      Defendants.

---

## ORDER RE: MOTIONS TO DISMISS

---

**Blackburn, J.**

      The matters before me are (1) the **State Defendants' Motion To Dismiss**

**Count VII of Plaintiffs' Complaint Under Rules 12(b)(1) and 12(b)(6)** [#83],[1] filed

---

[1] "[#83]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

April 30, 2015; and (2) the **Pueblo Defendants' Motion To Dismiss** [#85], filed April 30, 2015.  I grant the motions, dismiss Counts VII and VIII of the First Amended Complaint, enter judgment in favor of both the state and Pueblo defendants as to those severed counts, and also dismiss plaintiffs' RICO claims against the Pueblo defendants.

## I.  JURISDICTION

I putatively have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

Defendants' motions raise issues under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may consist of either a facial or a factual attack on the complaint.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  Because defendants' motion presents a facial attack, I must accept the allegations of the complaint as true.  *Id*.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists.  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994); *Fritz v. Colorado*, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this

standard "has been questioned, criticized, and explained away long enough," the

Supreme Court supplanted it in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562,

127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Pursuant to the dictates of *Twombly*, I

now review the complaint to determine whether it "'contains enough facts to state a

claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  "This

pleading requirement serves two purposes:  to ensure that a defendant is placed on

notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and

to avoid ginning up the costly machinery associated with our civil discovery regime on

the basis of a largely groundless claim."  *Kansas Penn Gaming*, 656 F.3d at 1215

(citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint

as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of

a cause of action" will not be sufficient to defeat a motion to dismiss.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal

quotation marks omitted).  *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48

(10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how

a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of

the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at

1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility

standard, the complaint must suggest "more than a sheer possibility that a defendant

has acted unlawfully." ***Iqbal***, 129 S.Ct. at 1949.  ***See also Ridge at Red Hawk***, 493

F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some*

set of facts in support of the pleaded claims is insufficient; the complaint must give the

court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.") (emphases in original).  For this reason, the complaint must

allege facts sufficient to "raise a right to relief above the speculative level." ***Kansas***

***Penn Gaming***, 656 F.3d at 1214 (quoting ***Twombly***, 127 S.Ct. at 1965).  The standard

will not be met where the allegations of the complaint are "so general that they

encompass a wide swath of conduct, much of it innocent." ***Robbins***, 519 F.3d at 1248.

Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff

plausibly (not just speculatively) has a claim for relief." ***Id.***

The nature and specificity of the allegations required to state a plausible claim

will vary based on context and will "require[] the reviewing court to draw on its judicial

experience and common sense." ***Iqbal***, 129 S.Ct. at 1950; ***see also Kansas Penn***

***Gaming***, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City***

***and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127

S.Ct. at 1965) (internal quotation marks omitted).

## III.  ANALYSIS

In 2012, Colorado voters approved Amendment 64, legalizing the cultivation,

manufacture, and possession of recreational marijuana in the state.  Under the

Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, however, marijuana

continues to be classified as a Schedule I drug, which makes the manufacture,

distribution, or possession of marijuana a crime under federal law.  Plaintiff Safe Streets

Alliance is "a membership organization whose members are interested in law

enforcement issues, particularly the enforcement of federal laws prohibiting the

cultivation, distribution, and possession of marijuana."  (**Am. Compl.** ¶ 8 at 4.)[2]  To that

end, they have brought this lawsuit, challenging the legality *vel non* of Amendment 64.

Both motions presently before me implicate Counts VII and VIII of the First

Amended Complaint,[3] designated therein as the "Preemption Counts," against Colorado

Governor John W. Hickenlooper, Executive Director of the Colorado Department of

Revenue Barbara J. Brohl, and Director of the Colorado Marijuana Enforcement

Division W. Lewis Koski. (the "state defendants"), as well as the Board of County

Commissioners of the County of Pueblo and the Pueblo County Liquor & Marijuana

Licensing Board (the "Pueblo defendants").  In addition, the Pueblo defendants' motion

also challenges the remaining counts of the operative complaint, which charge the

Pueblo defendants and the remaining defendants in this lawsuit with various violations

---

[2]  The individual plaintiffs are landowners whose property sits adjacent to a recreational marijuana grow operation in Rye, Colorado, and are members of Safe Streets Alliance.

[3]  I previously granted these defendants' motions to sever these counts from the remaining counts of the First Amended Complaint.  (**See Order Granting Motions To Sever** [#114], filed July 14, 2015.)

of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§

1961-1968.  Because none of these claims ultimately are viable, I grant both motions to

dismiss.

As originally pled, Counts VII and VII of the complaint purported to state claims

directly under the Supremacy Clause, **U.S. CONST.** Art. IV, cl. 2.[4]  (**See Compl.** ¶ 124 at

38 & ¶ 131 at 39 [#1], filed February 19, 2015.)  Not long after the complaint was filed,

however, the Supreme Court issued its opinion in ***Armstrong v. Exceptional Child***

***Center, Inc.***, – U.S. –, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015), in which it squarely

rejected the premise that there exists "an implied right of action under the Supremacy

Clause to seek injunctive relief against the enforcement or implementation of state

legislation."  ***Id.***, 135 S.Ct. at 1383 (citation and internal quotation marks omitted).  The

Supremacy Clause, said the Court, is a rule of decision:  "It instructs courts what to do

when state and federal law clash[.]"  ***Id.***  It is not, however, "the source of any federal

rights, and certainly does not create a cause of action."  ***Id.*** (internal citations and

quotation marks omitted).  Such a conclusion was found to be implicit in the history and

structure of the Supremacy Clause, as well as in its place within the broader context of

the Constitution itself:

> It is unlikely that the Constitution gave Congress such broad
> discretion [under the Necessary and Proper Clause, Art. I, §
> 8] with regard to the enactment of laws, while simultaneously
> limiting Congress's power over the manner of their
> implementation, making it impossible to leave the

---

[4]  The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

> enforcement of federal law to federal actors.  If the
> Supremacy Clause includes a private right of action, then the
> Constitution requires Congress to permit the enforcement of
> its laws by private actors, significantly curtailing its ability to
> guide the implementation of federal law.  It would be strange
> indeed to give a clause that makes federal law supreme a
> reading that limits Congress's power to enforce that law, by
> imposing mandatory private enforcement.

*Id.* at 1383-84.  Thus, the Court concluded that there is no private right of action under

the Supremacy Clause itself.

In so holding, the Court acknowledged that it had "long held that federal courts

may in some circumstances grant injunctive relief against state officers who are

violating, or planning to violate, federal law," but concluded that the Supremacy Clause

was not the source of that authority.  *Id.* at 1384.  Seizing on that concession, plaintiffs

promptly amended their complaint, invoking the power of "[f]ederal courts sitting in

equity . . . to set aside actions of state officials that are preempted under the Supremacy

Clause."  (**First Amended Compl.** ¶ 140 at 48 & ¶ 147 at 49 [#66], filed April 13, 2015.)

They thus claim that Counts VII and VIII state viable claims for injunctive relief.

I cannot agree.  As *Armstrong* makes clear, the right to call on the equity

powers of a federal court to enjoin enforcement of an allegedly preempted state law

must be found in substantive federal law.  *See Armstrong*, 135 S.Ct. at 1385.

Nevertheless, the court must be mindful that its equitable power "to enjoin unlawful

executive action is subject to express and implied statutory limitations.  Courts of equity

can no more disregard statutory and constitutional requirements and provisions than

can courts of law."  *Id.* (internal citations and quotation marks omitted).  Accordingly,

there is no room in which equity may operate if the federal statute either does not

provide a private right of action, *see id.* at 1387, or if the structure of the statute

otherwise "implicitly precludes private enforcement," *id.* at 1385.

Neither of those circumstances pertains with respect to the CSA.  There is a

strong presumption that criminal statutes, enacted for the protection of the general

public, do not create private rights of action.  *See Cannon v. University of Chicago*,

441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979); *Love v. Delta Air

Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002); *University of Colorado Hospital v.

Denver Publishing Co.*, 340 F.Supp.2d 1142, 1144 (D. Colo. 2004).  Plaintiffs point to

nothing in the text of the CSA that includes the type of "rights-creating language" which

"explicitly confer[s] a right directly on a class of persons that includes the plaintiff" or

"identif[ies] the class for whose especial benefit the statute was enacted."  *Love*, 310

F.3d at 1352.  *See also Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511,

1521, 149 L.Ed.2d 517 (2001) ("Statutes that focus on the person regulated rather than

the individuals protected create no implication of an intent to confer rights on a particular

class of persons.") (citation and internal quotation marks omitted).  Thus, federal courts

uniformly have held that there are no private rights of action under the CSA.  *See, e.g.*,

*Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir.), *cert. denied*, 130 S.Ct. 2147 (2010);

*Schneller v. Crozer Chester Medical Center*, 387 Fed. Appx. 289, 293 (3rd Cir. 2010),

*cert. denied*, 131 S.Ct. 1684 (2011); *Felmlee v. Oklahoma*, 2014 WL 4597724 at *6

(N.D. Okla. Sept. 15, 2014), *aff'd*, 620 Fed. Appx. 648 (10th Cir. July 14, 2015); *United

States v. Real Property & Improvements Located at 1840 Embarcadero, Oakland,

California*, 932 F.Supp.2d 1064, 1072 (N.D. Cal. 2013); *Jones v. Hobbs*, 745

F.Supp.2d 886, 893 (E.D. Ark. 2010), *aff'd*, 658 F.3d 842 (8th Cir. 2011), ***cert.***

***dismissed***, 133 S.Ct. 97 (2012); ***Bowling v. Haas***, 2010 WL 3825467 at *3 (E.D. Ky.

Sept. 23, 2010); ***West v. Ray***, 2010 WL 3825672 at *3 (M.D. Tenn. Sept. 24, 2010),

*aff'd*, 401 Fed. Appx. 72 (6th Cir. Nov. 4, 2010), ***cert. denied***, 131 S.Ct. 941 (2011);

***Ringo v. Lombardi***, 2010 WL 3310240 at *2 (W.D. Mo. Aug. 19, 2010);   ***McCallister v.***

***Purdue Pharma L.P.***, 164 F.Supp.2d 783, 793 & n.16 (S.D. W. Va. 2001).

Plaintiffs nevertheless insist that the structure of the CSA does not preclude

private enforcement.  I am not persuaded.  The ***Armstrong*** Court identified two factors

which it found demonstrated Congress's "intent to foreclose" equitable relief in that

case.  Both are at play in this instance as well.

First, the ***Armstrong*** Court noted that "the express provision of one method of

enforcing a substantive rule suggests that Congress intended to preclude others."

***Armstrong***, 135 S.Ct. at 1385 (citation and internal quotation marks omitted).  Plaintiffs'

suggestion that there is no such enforcement mechanism in the CSA's preemption

clause, ***see*** 21 U.S.C. § 903, misses the mark.  For the proper focus is not on the rule of

decision embodied in the preemption provision, but on those specific substantive

provisions of the CSA plaintiffs would seek to enforce by this lawsuit – that is, those that

criminalize the possession and distribution of marijuana.  ***See, e.g.***, 21 U.S.C. §§ 841,

843, 848, 854, 856.  Those provisions may be enforced criminally, ***see id.*** §§ 841-852,

civilly, ***see id.*** § 881, or administratively, ***see id.*** § 875.  The availability of such a

panoply of remedies to enforce the nation's drug laws strongly suggests that Congress

did not intend to provide additional recourse through private actions in equity.

More importantly, the authority to enforce these (and most other[5]) substantive

provisions of the CSA – *or not* – rests entirely with the United States Attorney General

and, by her delegation, the Department of Justice.  *See* 21 U.S.C. § 871(a).  ***See also***

***Schneller***, 387 Fed. Appx. at 293; ***Shmatko v. Arizona CVS Stores LLC***, 2014 WL

3809092 at *2 (D. Ariz. Aug. 1, 2014).  Her charging discretion is the "special province"

of the Executive Branch:

> The Attorney General and United States Attorneys retain
> broad discretion to enforce the Nation's criminal laws.  They
> have this latitude because they are designated by statute as
> the President's delegates to help him discharge his
> constitutional responsibility to take Care that the Laws be
> faithfully executed. . . .   In the ordinary case, so long as the
> prosecutor has probable cause to believe that the accused
> committed an offense defined by statute, the decision
> whether or not to prosecute, and what charge to file or bring
> before a grand jury, generally rests entirely in his discretion.

***United States v. Armstrong***, 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d

687 (1996) (citations and internal quotation marks omitted).  ***See also United States v.***

***Batchelder***, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979) ("Whether

to prosecute and what charge to file or bring before a grand jury are decisions that

generally rest in the prosecutor's discretion.").[6]

---

[5]  There a limited number of instances in which states may be granted authority to enforce the CSA.  *See* 21 U.S.C. §§ 878(a) (Attorney General may designate state or local law enforcement officers to perform specified duties under the CSA), 882(c)(1) (state may bring civil action to enforce provisions of CSA against online pharmacies).  There are no provisions of the CSA which expressly create private rights of action, however.  *See id.* § 882(c)(5) ("No private right of action is created under this subsection.")

[6]  Although there are constitutional limits on this discretion, these principally implicate the mandates of the Equal Protection Clause to prohibit the exercise of prosecutorial discretion "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." ***Batchelder***, 99 S.Ct. at 2205 n.9 (citation and internal quotation marks omitted)).  In the absence of any suggestion that such improper factors are implicated here, the government's "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." ***Oyler v. Boles***, 368 U.S. 448, 456, 82 S.Ct.

The recognition of this sweeping prosecutorial discretion addresses directly the

second factor identified in *Armstrong* as suggesting an intent to foreclose equitable

relief:  the "judicially unadministrable nature" of the CSA.  *Armstrong*, 135 S.Ct. at

1385.  There certainly can be no more "judgment-laden standard" than that which

confers almost complete discretion on the Attorney General to determine whether to

assert the supremacy of federal law to challenge arguably conflicting state marijuana

laws.  *See id.*  The Department of Justice has made a conscious, reasoned decision to

allow the states which have enacted laws permitting the cultivation and sale of medical

and recreational marijuana to develop strong and effective regulatory and enforcement

schemes.  *See* James M. Cole, **Guidance Regarding Marijuana Enforcement**, United

States Department of Justice, Office of the Deputy Attorney General (August 29, 2013)

[hereinafter "**Guidance**"] (available at http://www.justice.gov/iso/opa/resources/

3052013829132756857467.pdf) (last accessed January 19, 2016).[7]  Allowing private

litigants to interfere with that discretionary decision would create precisely the type of

"risk of inconsistent interpretations and misincentives" which strongly counsel against

recognizing an implicit right to a judicially created equitable remedy.  *See Armstrong*,

---

501, 506, 7 L.Ed.2d 446 (1962).

[7]  DOJ has elected to focus its resources and efforts, including prosecution, on eight enforcement priorities in relation to the manufacture, sale, and possession of marijuana.  *See* **Guidance**.  Noting that "[o]utside of these enforcement priorities, the federal government has traditionally relied on states and local law enforcement agencies to address marijuana activity through enforcement of their own narcotics laws," DOJ has determined to allow the states to develop and implement "strong and effective regulatory and enforcement systems" consistent with federal enforcement priorities, and has advised federal prosecutors to exercise their charging discretion in light of those same priorities.  *Id. See also* Ryan Grim, "Eric Holder Says DOJ Will Let Washington, Colorado Marijuana Laws Go Into Effect," **Huffington Post, Politics** (Aug. 29, 2013) (characterizing DOJ's approach to state marijuana legalization as "trust but verify") (available at http://www.huffingtonpost.com/2013/08/29/eric-holder-marijuana-washington-colorado-doj_n_3837034.html) (last accessed January 19, 2016).

135 S.Ct. at 1385.

Accordingly, I find and conclude that Counts VII and VIII of the First Amended Complaint fail to state viable claims for relief.  Defendants' motions to dismiss those claims therefore will be granted on that basis, obviating the need to address defendants' remaining arguments regarding these Counts.

This decision leaves only the question whether Counts I though VI of the First Amended Complaint state viable claims under RICO against the Pueblo defendants. Every federal appellate court to consider the issue has held that government entities are not subject to RICO, either because they are incapable of forming a specific criminal intent, *see Gil Ramirez Group, L.L.C. v. Houston Independent School District*, 786 F.3d 400, 412 (5th Cir. 2015); *Rogers v. City of New York*, 359 Fed. Appx. 201, 204 (2nd Cir. Dec. 31, 2009); *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 404 (9th Cir. 1991), *cert. denied*, 112 S.Ct. 1168 (1992), and/or because exemplary damages are not available against municipal corporations, *see Gil Ramirez Group*, 786 F.3d at 412-13; *Lancaster Community Hospital*, 940 F.2d at 404-05; *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3rd Cir. 1991).  Likewise, federal district courts which have confronted this issue unanimously have refused to impose RICO liability on government entities.  *See, e.g.*, *Melcher v. Wiggins*, 2014 WL 1600511 at *2 (S.D. Tex. April 21. 2014); *Reyes v. City of Chicago*, 585 F.Supp.2d 1010, 1014 (N.D. Ill. 2008); *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 457 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2nd Cir. 1999); *County of Oakland by Kuhn v. City of Detroit*, 784 F.Supp. 1275, 1283 (E.D. Mich. 1992); *Biondolillo v. City of*

*Sunrise*, 736 F. Supp. 258, 260-61 (S.D. Fla. 1990); *Smallwood v. Jefferson County Government*, 743 F.Supp. 502, 504 (W.D. Ky 1990); *Jade Aircraft Sales, Inc. v. City of Bridgeport*, 1990 WL 128573 at *1 (D. Conn. July 9, 1990); *Victor v. White*, 1989 WL 108276 at *5-6 (N.D. Cal. July 26, 1989); *Albanese v. City Federal Savings and Loan Association*, 710 F.Supp. 563, 565 (D.N.J. 1989); *Massey v. City of Oklahoma*, 643 F.Supp. 81, 84-85 (W.D. Okla. 1986).

Plaintiffs' arguments in contravention of this solid body of authority are unpersuasive.  The fact that government entities may be found to act with recklessness or deliberate indifference in civil matters does not translate neatly to the issue of criminal *mens rea*, such as is required to state a claim under RICO:

> [R]acketeering activity is defined to mean various *criminal* acts, requiring *mens rea*.  In other words, a finding of racketeering activity requires *indictable criminal* conduct. Therefore, because only criminal violations suffice as predicate acts under RICO, plaintiff must allege that defendants committed the acts willfully or with actual knowledge of the illegal activities.

*Friedlob v. Trustees of Alpine Mutual Fund Trust*, 905 F.Supp. 843, 859 (D. Colo. 1995) (internal citation omitted; emphases in original).  The weight of persuasive authority supports a conclusion that government entities cannot form specific criminal intent.  *See Gil Ramirez Group*, 786 F.3dat 412; *Rogers*, 359 Fed. Appx. at 204; *Lancaster Community Hospital*, 940 F.2d at 404.  *See also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S. Ct. 2748, 2757, 69 L. Ed. 2d 616 (1981) (noting "respectable authority to the effect that municipal corporations can not, as such, do a criminal act or a willful and malicious wrong" ) (citation and internal quotation

marks omitted).[8]

Nor am I convinced by plaintiffs' suggestion that ***PacifiCare Health System, Inc.***

***v. Book***, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003), undermines the well-

reasoned authority to the effect that government entities cannot be liable under RICO

because they are immune from punitive damages.[9]  This argument has been soundly

rejected by at least two federal appellate courts.  ***See Gil Ramirez Group***, 786 F.3d at

412-13; ***Tengood v. City of Philadelphia***, 529 Fed. Appx. 204, 209 n.4 (3rd Cir. June

17, 2013).  As the Fifth Circuit cogently explained:

> . . . . [T]o overcome municipal immunity from punitive
> damages, Congress must clearly express its intention.  No
> such clear intent to overcome governmental immunity
> appears in the RICO provision for treble damages.
>
> . . . .
>
> The [***PacifiCare***] Court's ambivalence about punitive
> damages complicates analysis here, but we believe
> ***PacifiCare*** cannot salvage a claim against [the government
> entity defendant].  First, the Supreme Court's
> characterization of RICO treble damages as "remedial" in
> ***PacifiCare*** cannot substitute for an express Congressional

---

[8]  In dicta, the Third Circuit has taken issue with this rationale, noting that "[c]ourts  long have held ordinary corporations civilly and criminally liable for the malicious torts or crimes of their high officers, particularly when the corporation benefits from the officers' offensive conduct."  ***Genty***, 937 F.2d at 909.  In this case, however, plaintiffs have not sued the individual members of the Pueblo Board of County Commissioners or the Pueblo County Liquor & Marijuana Licensing Board.  Instead, the Pueblo defendants are sued as government entities.  In that form, they have no capacity to form a criminal *mens rea*, a fact which even the ***Genty*** court acknowledged.  ***See id.*** (noting that "absent express statutory authorization, the common law ordinarily did not allow criminal indictments against municipal corporations for certain serious offenses").

[9]  The Court in ***PacifiCare*** considered whether provisions contained in contracts between the parties compelled arbitration of the plaintiff's RICO claims where the arbitration provisions precluded an award of punitive damages.  ***PacifiCare***, 123 S.Ct. at 1533.  In addressing that question, the Court noted that statutory treble damages provisions exist along a continuum, "serving remedial purposes in addition to punitive objectives," and that RICO's provision is not entirely punitive but also serves remedial purposes.  ***Id.*** at 1535.

abrogation of municipal immunity from treble damages,
which, whatever the characterization, exceed actual provable
damages. . . .   Second, nothing in **PacifiCare** contravenes
the Court's earlier holdings that treble-damages provisions
serve both compensatory and punitive functions.  Third, the
narrow question posed in **PacifiCare** was whether an
arbitration agreement's ban on punitive damages included
RICO treble damages.  The Court refused to interpret the
private parties' agreement, holding that threshold duty for an
arbitrator.  **PacifiCare** has no bearing on the liability of
governmental entity defendants for treble damages under
RICO.

For these reasons, we conclude that [plaintiff] cannot
proceed against [the government entity defendant] under
RICO's mandatory treble damage provision.  Because
Congress wrote no single-damage alternative, and we lack
power to revise federal statutes, Appellants fail to state a
cognizable RICO claim against [the government entity
defendant).

*Gil Ramirez Group*, 786 F.3d at 412-13 (other citations, internal quotation marks, and

footnotes omitted).  *See also Tengood*, 529 Fed. Appx. at 209 n.4 ("Although . . .

language in *PacifiCare* explains that RICO's mandatory treble damages award is both

compensatory and punitive in nature, this fact was recognized in *Genty* [*v. Resolution*

*Trust Corp.*, 937 F.2d at 910], and did not affect our holding in that case.").

Accordingly, I find that plaintiffs cannot state viable claims under RICO against

the Pueblo defendants.  The motion to dismiss those claims therefore must be granted.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **State Defendants' Motion To Dismiss Count VII of Plaintiffs'**

15

**Complaint Under Rules 12(b)(1) and 12(b)(6)** [#83], filed April 30, 2015, is granted;

2.  That the **Pueblo Defendants' Motion To Dismiss** [#85], filed April 30, 2015, is granted;

3.  That Counts VII and VIII of the **First Amended Complaint** [#66], filed April 13, 2015, are dismissed with prejudice;

4.  That Counts I through VI, inclusive, of the **First Amended Complaint** [#66], filed April 13, 2015, are dismissed with prejudice as to the Pueblo defendants only;

5.  That as to Counts VII and VIII of the **First Amended Complaint** [#66], filed April 13, 2015, judgment with prejudice shall enter on behalf of defendants, John W. Hickenlooper, in his official capacity as Governor of Colorado; Barbara J. Brohl, in her official capacity as Executive Director of the Colorado Department of Revenue; W. Lewis Koski, in his official capacity as Director of the Colorado Marijuana Enforcement Division; The Board of County Commissioners of the County of Pueblo; and Pueblo County Liquor & Marijuana Licensing Board, and against plaintiffs, Safe Streets Alliance; Phillis Windy Hope Reilly; and Michael P. Reilly;

6.  That as to Counts I through VI, inclusive, of the **First Amended Complaint** [#66], filed April 13, 2015, at the time judgment enters, judgment with prejudice shall enter on behalf of defendants, The Board of County Commissioners of the County of Pueblo; and Pueblo County Liquor & Marijuana Licensing Board, and against plaintiffs, Safe Streets Alliance; Phillis Windy Hope Reilly; and Michael P. Reilly;

7.  That defendants are awarded their costs associated with Counts VII and VIII (*see* **Order Granting Motion To Sever** [#114], filed July 14, 2015), to be taxed by the

clerk of the court in the time and manner specified in Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1;

8.  That at the time judgment enters, the Pueblo defendants are to be awarded

any additional costs associated with Counts I through VI, inclusive, to be taxed by the

clerk of the court in the time and manner specified in Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1; and

9.  That defendants, John W. Hickenlooper, in his official capacity as Governor of

Colorado; Barbara J. Brohl, in her official capacity as Executive Director of the Colorado

Department of Revenue; W. Lewis Koski, in his official capacity as Director of the

Colorado Marijuana Enforcement Division; The Board of County Commissioners of the

County of Pueblo; and Pueblo County Liquor & Marijuana Licensing Board, are

dismissed as named parties to this action, and the case caption amended accordingly.

Dated January 19, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge