**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

_____

SAFE STREETS ALLIANCE, et al.,           Civil Action: No. 15-349-REB-MLC

Plaintiffs,

v.

ALTERNATIVE HOLISTIC

HEALING, LLC, et al.,

Defendants.

_____

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

## STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986).

A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th

Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d

837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

However, "conclusory and self-serving statements are insufficient to survive summary judgment." *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000). Likewise, "general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment," *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834

(10th Cir. 1986), and "[v]ague, conclusory statements do not suffice to create a genuine issue of material fact." *Ford*, 222. F.3d at 777.

Rather, "[t]o survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted). The Court is not obliged to "comb the record" to identify factual disputes or make a party's case for it. *Ford*, 222 F.3d at 777. A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), cert. denied, 115 S.Ct. 1315 (1995).

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. The property abutting the Defendants' land, whose legal description is LOT 1 THE MEADOWS AT LEGACY RANCH FORMERLY #46-000-00-045 + 049 +

---

[1] Defendants state that these facts are undisputed solely for the purpose of this Motion. Defendants reserve the right to dispute each of these facts during any future proceedings, including at trial.

3

090 + 221 + 56-000-00-025 ("Lot 1"), was purchased by the Plaintiffs in 2014 for $35,000. *See Exhibit A*, Reilly Lot 1 Tax Valuation page 2.

2. The Plaintiffs purchased the property known as LOT 2 THE MEADOWS AT LEGACY RANCH FORMERLY #46-000-00-045 + 049 + 090 +221 + 56-000-00-025("Lot 2") in 2011 for $34,900. *Id* at 10.

3. The Defendant purchased his property, known as 33-24-66 NE4 NW4 FORMERLY 46-000-00-155 ("6480") for $44,900 in 2014. *Id* at 20.

4. Lot 1 abuts 6480, and does not contain any buildings of any sort; the Plaintiffs live on Lot 2. *Reilly Dep.* 14:16, 17, 24, 25.

5. Lot 1 is a 35.03 acre parcel of land. *Exhibit A* at 1.

6. Lot 1, Lot 2, and 6480 are all zoned A-1, which is Pueblo County Zoning Code for Agricultural 1. *Ex*hibit B highlights the location of Lot 1, the parties do not dispute that lots 1, 2, and 6480 abut each other.

7. Pursuant to Pueblo County Zoning, recreational marijuana cultivation is limited to zone A-1. *Exhibit C* at 1.

8. There is no other zone that the Defendant could have legally operated a retail cultivation facility. *Exhibit C passim.*

9. Lot 1 was valued by Pueblo County at $1522 the year which the Plaintiffs purchased it. *Exhibit A* at 7.

10. 6480, the lot which abuts Lot 1 was valued at $550 the same year, 2014. *Id* at 25.

11. The Defendant obtained his license to cultivate marijuana in October, 2014. *Exhibit G*.

4

12. In 2015, the year after 6480 Pickney, LLC obtained it's recreational marijuana cultivation license, 6480's lot was valued at $40,000. *Exhibit A* at 24.

13. In 2016, the year following completion of 6480 Pickney, LLC's marijuana cultivation facility, the county assessed the value of 6480's lot and buildings at $255,366, an increase of $215,366. *Id* at 23.

14. In the year following the issuance of 6480 Pickney LLC's recreational marijuana cultivation license, 2015, Lot 1 increased in value by $129 to $1651. *Id* at 6.

15. In the year following the opening of 6480 Pickney LLC's recreational marijuana facility, 2016, Lot 1 remained at $1651 in value according to the county. *Id* at 5.

16. In 2017, Lot 1 increased by $115 in value to $1766, though it was still just a plot of dirt in between Lot 2 and 6480's facility. *Id* at 4.

17. In 2018, Lot 1 remained at $1766 in value. *Id* at 3,

18. In 2014, Lot 2, the lot on which the Plaintiff resides was valued by the county at $6816, the same valuation as the prior year, as 2013 had been the year in which Lot 2 was assessed a higher tax valuation. *Exhibit A* at 16, 17.

19. In 2015, the year after which 6480 Pickney LLC obtained its recreational marijuana cultivation license, Lot 2 increased in value by $127. *Id* at 15.

20. In 2016, the Plaintiffs' land on Lot 2 improved to $45,466, an increase of $38,523. *Id* at 13.

21. The Plaintiffs constructed residential buildings on the property even though they were aware that the Defendant was operating a recreational marijuana cultivation facility, as they had attended the meeting where the public could comment on the

Defendant obtaining a marijuana cultivation license. *Reilly Dep.*

26:2,3,7,8,15,16,17,18.

22. In 2017, 3 years after the Plaintiffs filed a lawsuit alleging that their property value had been damaged by the Defendants' activities, Pueblo County assessed the Plaintiffs' property on Lot 2 at $140,340 – an increase in value of $94,874. *Exhibit A* at 12.

23. In 2018, three years after the Plaintiffs filed a lawsuit claiming that the Defendants' activities damaged their property values, and 3 years after the Defendants' recreational marijuana cultivation facility had been operational, the Plaintiffs property remained valued at $140,340, as the county does not increase property values in subsequent years barring changes to the property. *Exhibit A* at 11.

24. At no point since the Defendant bought his property has the Plaintiffs' property decreased in value according to Pueblo County. *Exhibit A* 1-18.

25. At no point since the Defendant obtained his recreational marijuana cultivation license has the Plaintiffs' property decreased in value pursuant to county appraisal figures. *Id.*

26. At no point since the Defendant began operating his recreational marijuana cultivation facility has the Plaintiffs' property decreased in value pursuant to county appraisal figures. *Id.*

27. Each year since the Defendant has possessed his recreational marijuana license, the Plaintiffs' property has either increased or remained the same in value pursuant to county appraisal records. *Id.*

28. Each year since the Defendant has operated his recreational marijuana cultivation facility the Plaintiffs' property has increased or remained the same in value. *Id.*

29. The Plaintiffs' own expert admits that the properties referred to as Lots 1 and 2 have increased in value. *Reilly's expert report* at 9.

30. The Plaintiffs have never tried to sell the property. *Reilly Dep.* 15:18,19.

31. The Plaintiffs have never had the property appraised. *Reilly Dep.* 15: 23-25.

32. The Plaintiffs' expert is not a trained property appraiser. *Plaintiff's Expert Report at* 2,3.

33. The Plaintiffs' expert has never served as an expert witness related to property appraisal. *Id* at 19.

34. The Plaintiffs' expert has never been to the Plaintiffs' nor Defendants' properties. *Id* at 2.

35. The Plaintiffs' expert did not perform a traffic analysis of the traffic experienced by the Plaintiffs. *Id.*

36. The Plaintiffs expert did not conduct any sort of odor impact study on the properties in question. *Id.*

37. The Plaintiffs did not retain any expert other than Dr. Billups.

38. Therefore, there are not forthcoming reports from someone qualified to appraise property.

39. There are no reports forthcoming to substantiate the Plaintiffs concerns that they have an odor issue related to the Defendants' activities.

40. According to the Colorado Department of Public Health and Environment, an odor reading is defined as two measurements of odor concentration separated by at least 15 minutes but no longer than 60 minutes at each of the three locations. Both measurements at or beyond the property line must be 7:1 to be considered a reportable violation of the property line odor standard. If a violation of the 7:1 standard is obtained the producer must report the violation to the Ag Program and the local health department within two hours. A phone message or an email is considered adequate notification, if the inspector cannot be reached in person. *Exhibit D* at 2 (The Defendants' odor expert refers to this document as Exhibit 1 in her report).

41. The Defendants' expert uses one of two approved mechanisms for determining, objectively and scientifically, whether there is an odor present in Colorado. *Exhibit E* at 1.

42. The Plaintiffs did not retain an expert who performs odor testing using either method.

43. Therefore, the Plaintiffs can only introduce lay testimony as to the presence of an injury, whereas Colorado has threshold standards for odor nuisances. *Exhibit E* at 4.

44. Chart showing land valuation for each plot according to Pueblo County Assessor's office:

|       | 2014  | 2015   | 2016   | 2017     | 2018     |
|-------|-------|--------|--------|----------|----------|
| Lot 1 | $1522 | $1651  | $1651  | $1766    | $1766    |
| Lot 2 | $6816 | $6943  | $45466 | $140340  | $140340  |
| 6480  | $550  | $40000 | $255366| $251645  | $251645  |

45. In the Second Amended Complaint, Count I, II, V, and VI relate to the remaining Defendants. *See Second Amended Complaint.*

46. The damages alleged in Counts I, II, V, and VI contain theories of recovery based on this theory: "noxious smells to travel onto [Plaintiffs'] property, interfering with its use and enjoyment, diminishing its market value, and making it more difficult to sell." *See Second Amended Complaint at* 35 (Count I), 39 (Count II), 45 (Count V), 47 (Count VI).

47. None of the theories of recovery relate to any other activity lessening the value of the Plaintiffs property. *Id.*

## ARGUMENT

Only three types of damages are available to Plaintiffs and the Plaintiffs do not have sufficient evidence to create a genuine issue of material fact on any of the three.

*We therefore conclude that the Reillys can, at most, presently recover only for three types of property injuries that were plausibly pled in their Second Amended Complaint: (1) the interference with the Reillys' use and enjoyment of their land caused by the noxious odors emanating from the Marijuana Growers' operation; (2) the diminution in the land's value presently caused by those odors; and (3) the diminution in the land's value presently caused by the existence of that publicly disclosed, ongoing criminal enterprise adjacent to the Reillys' land. Consequently, we affirm the district court's order dismissing the Reillys' RICO claims premised on any other type of injury.*

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 889 (10th Cir. 2017)

## I.    The Plaintiffs have no evidence that noxious odors exist on their property, and the Defendants' expert conclusively proves otherwise

The Defendant is entitled to summary judgment because the Plaintiffs have not, cannot, and will not be able to prove that there is an odor arising from the Defendants property, and therefore cannot claim that they are damaged by the Defendants' legal activities. The Defendants' expert objectively asserts in her report that at no point

In a private nuisance action, the plaintiff must establish that the defendant unreasonably interfered with the use and enjoyment of his property. *Miller v. Carnation* Co., 33 Colo.App. 62, 516 P.2d 661 (1973). Additionally, the interference which occurs must be substantial in nature in that it would be offensive or cause inconvenience or annoyance to a reasonable person in the

10

community. *Northwest Water Corp. v. Pennetta*, 29 Colo.App. 1, 479 P.2d 398

(1970). Liability for nuisance may rest upon any one of three types of conduct: an

intentional invasion of a person's interest; a negligent invasion of a person's

interest; or, conduct so dangerous to life or property and so abnormal or out-of-

place in its surroundings as to fall within the principles of strict liability. *Baughman

v. Cosler*, 169 Colo. 534, 459 P.2d 294 (1969). *Haas v. Lavin*, 625 F.2d 1384,

1389 (10th Cir. 1980).

The interference alleged by the Plaintiffs is shared by none of the

Defendants' neighbors. The Plaintiffs themselves have never reported the

Defendant for an odor violation. None of the Defendants' neighbors have

reported 6480 Pickney, LLC for an odor violation. The business is licensed by

both the County of Pueblo and the State of Colorado, and has been approved

since 2014. The Plaintiff herself describes the odor produced by the Defendants'

legal, licensed, marijuana operation as "faint" and "intermittent." *Reilly Dep* at

21:18, 19. The Plaintiff also says that the odor they allege to be produced by the

Defendant is not "persistent." *Id* at 21:17. The standards for nuisance under

Colorado law require that the interference is substantial. An odor which is not

ever present, doesn't cause health concerns, and arises near the Plaintiffs'

dumpster is the opposite of substantial, in fact, it is frivolous.

The Defendants' odor expert took readings at 20 separate locations

around the Defendants' property. *Exhibit D* at 3. The odor is described as "faint"

and "intermittent" by the Defendants' expert. *Id at* 7. The Defendants' expert

concludes her report by saying that "no discernible cannabis odor was detected

11

outside of the facility and is barely recognizable past the perimeter of the
CANNACRAFT property and should not adversely affect the surrounding
community." *Id* at 7. What's important for this court to examine related to the
experts report though is that objective standards in Colorado in fact exist related
to odor as perceived through the same technology that the Defendants' expert
used – one of only two methods accepted by the Colorado Department of Health
and Environment, the state agency in charge of addressing nuisance odors.

According to The Colorado Department of Public Health and Environment, An
odor reading is defined as two measurements of odor concentration separated by
at least 15 minutes but no longer than 60 minutes at each of the three locations.
*Exhibit D* at 2. Both measurements at or beyond the property line must be 7:1 to
be considered a reportable violation of the property line odor standard. *Exhibit D*
at 2  If a violation of the 7:1 standard is obtained the producer must report the
violation to the Ag Program and the local health department within two hours.
*Exhibit D* at 2. A phone message or an email is considered adequate notification,
if the inspector cannot be reached in person. *Exhibit D* at 2 (The Defendants'
odor expert refers to this document as Exhibit 1 in her report).

Here, the Defendants' odor expert never detected an odor greater than 2:1,
despite testing 20 locations over multiple days. *Exhibit D* at 5-7. In fact, all
findings of odor were below the lowest threshold for a result, meaning that the
odor was barely, if ever, noticeable with a bare nose. *Exhibit D* at 7.

Because the Plaintiffs have failed to introduce any objective or scientific evidence related to their odor claims, summary judgment must be granted for the Defendants.

**II.    The Plaintiffs have no competent evidence their property value diminished.**

The Defendant is entitled to Summary Judgment because all experts in the case, including the Plaintiff's expert agree that the property has increased in value, and the 10th circuit held in its remand order that speculative damages could not be considered in this case.Therefore, any attempts by the Plaintiff's expert to discuss future damages based on things that "may" or "could" occur cannot be considered by this court. As the Plaintiff's expert agrees with the Defendants' expert that the property, contemporaneous with this motion for summary judgment, has in fact increased in value, and as the 10th circuit held that the Plaintiffs could only recover for a diminution in land value, and not speculative damages, "a plaintiff cannot recover for emotional, personal, or speculative future injuries under § 1964(c). See RJR, 136 S.Ct. at 2108." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 888–89 (10th Cir. 2017). Here, granting summary Judgment for the Defendant can be the only proper outcome in this case.

Defendants' experts have conclusively proved that Defendants' activities have increased the value of Plaintiff's land, which was and is undeveloped.  Plaintiffs have no cognizable injury:  they admit that they have never had their property appraised, nor have they ever attempted to sell the property. The Plaintiffs admit that they have never had their property appraised, and that they have never tried

to sell their property. *Reilly Dep.* 15:18,19,.23-25. The Plaintiff's expert is not qualified in property valuation, has no sort of methodology for his assertions that the property has decreased in value, and perplexingly assets that the value of the 3 properties is $240,855. *Reilly's expert report* at 9. As Plaintiff's own expert admits, even through faulty methodology, the Plaintiff's three properties have increased in value, from $112,036 at purchase time to $240,855. *Id.* The Plaintiffs have never had the property appraised by a real estate appraiser, nor have they tried to sell the property – all damages alleged in the complaint are speculative, no non-speculative damages can be raised now that the disclosure deadline has passed, and summary judgment for the Defendant is the property remedy in this case. The Plaintiffs Theory of recovery is one that odor has damaged the property value, and the Plaintiffs have presented no evidence that odor is even existent on the property. The only evidence that this

III.     **Because the highest and best use of the Plaintiffs' land is that of a marijuana grow, Defendants' operation actually increases the Plaintiffs' property value.**

Summary judgment is appropriate where the Plaintiffs have not and will not introduce any evidence related to the best use of the Plaintiffs' and Defendants' property. The Defendants have introduced evidence related to the best use of this kind of property from an expert, the expert has been qualified in this field in this court, and the expert states that the highest and best use of the Plaintiffs property is to be used as a Marijuana Cultivation operation. *Exhibit F* at 32.

Defendants' uncontroverted evidence is overwhelming, the Plaintiffs have presented and can offer no evidence otherwise to rebut.

The four factors to be used in determining a property's highest and best use are legal permissibility, physical possibility, financial feasibility, and maximal productivity. *See Appraisal Institute, The Appraisal of Real Estate 280* (14th ed. 2013). *Bd. of Cty. Commissioners of Cty. of Weld v. DPG Farms, LLC*, 2017 COA 83, ¶ 13. Here, it is uncontroverted that for the purposes of land valuation, using the Plaintiffs property as a marijuana cultivation facility is legally permissible, as the Defendant has been issued both state and county licenses to cultivate marijuana on his property. It is uncontroverted that it is physically possible to do so on the property, as the Defendants' property is contiguous to the Plaintiffs' property. It is likely financially feasible for the Plaintiffs to start a marijuana company, as the costs to entry are not significant. Lastly, the maximum productivity of the land is indisputably marijuana cultivation, as the kind of land which the Plaintiffs reside on and own next to the Defendants' plot is one of two kinds of agricultural zoning that has been approved by the county for recreational marijuana cultivation. While non-contiguous cultivation is allowed in two other zoning districts, out of the four agricultural zoning areas recognized by Pueblo County, stand-alone recreational grows are only permitted on A-1 and A-2 zoned properties. *Exhibit C* at 1,5,6, 8, 12, 18, 22, 25. If the Plaintiffs wanted to purchase land where the highest and best use of an agricultural property was not that of a marijuana cultivation operation, they could have purchased an A-3 or A-

4 lot, which do not allow marijuana cultivation, but do allow other equestrian activities. *Id* at 5-6.

## CONCLUSION

The Plaintiff's theory of recovery is that "noxious odor" created by the Defendants' licensed marijuana business decreased their property value, decreased the Plaintiffs' use and enjoyment, and made the property more difficult to sell. The Defendants have conclusively proved that there were no odors entering the Plaintiffs' property, the recorded odors on the Defendants' property fell far below Colorado standards for nuisance, and the Plaintiffs themselves admit that they have never tried to sell their property. As there is no theory of recovery under which the Plaintiffs can succeed, granting motion for summary judgment in favor of the Defendants is the logical conclusion to this complaint.

WHEREFORE, the Defendants pray for an order granting summary judgment for the defendants, and request a hearing on attorneys' fees and costs pursuant to FRCP rule 56.

DATED: June 7, 2018

*/S Matthew W Buck*
Attorney for the Defendants
RED LAW LLC
445 Broadway Suite 126
Denver, CO 80203
720-771-4511
matt@red.law

## **CERTIFICATE OF SERVICE**

I, Matthew W. Buck, hereby certify that I served the foregoing motion on opposing counsel via the court's ECF system on June 7, 2018.

*/S Matthew W Buck*