**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-00349-REB-MLC

SAFE STREETS ALLIANCE, et al.,

      Plaintiffs,

v.

ALTERNATIVE HOLISTIC HEALING, LLC, d/b/a Rocky Mountain Organic, et al.,

      Defendants.

## ORDER RE: SUMMARY JUDGMENT MOTIONS

**Blackburn, J.**

The matters before me are (1) plaintiffs' **Motion for Summary Judgment on Counts I and V** [#219],[1] filed June 7, 2018; (2) **Defendants' Motion for Summary Judgment Pursuant to FRCP 56** [#220], filed June 7, 2018; and (3) plaintiffs' **Motion To Strike Errata Sheet** [#225], filed July 11, 2018.  I grant the motion to strike defendants' errata sheet, grant plaintiffs' motion for summary judgment in part and deny it in part, and deny defendants' motion for summary judgment, as further expatiated herein.[2]

---

[1] "[#219]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the motions stand submitted on the briefs. *Geear v. Boulder Community Hospital*, 844 F.2d 764, 766 (10th Cir.) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), *cert. denied*, 109 S.Ct. 312 (1988).

## I.  JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. §1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).[3] In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by

---

[3] The mere fact that both plaintiffs and defendants have filed motions for summary judgment does not necessarily establish that summary judgment is proper. **See Atlantic Richfield Co. v. Farm Credit Bank of Wichita**, 226 F.3d 1138, 1148 (10th Cir. 2000). **See also Buell Cabinet Co. v. Sudduth**, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III. ANALYSIS

Defendant Parker Walton owns, manages, and controls two entities – defendants 6480 Pickney, LLC, and Camp Feel Good, LLC – which cultivate and sell recreational marijuana at a facility located at 6480 Pickney Road in Rye, Pueblo County, Colorado. (***See* Motion App.** at 15, 18, 21.)[4] Plaintiffs[5] are the owners of three contiguous parcels of land – Lots 1, 2, and 6 – in the Meadows at Legacy Ranch, Pueblo County, Colorado, located adjacent to defendants' commercial marijuana grow. In this suit, plaintiffs allege defendants' operation of the facility violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964(c) & (d).

Plaintiffs seek summary judgment as to Counts I and V of the Amended Complaint ([#126], filed February 1, 2016).[6] For their part, defendants move for

---

[4] 6480 Pickney, LLC, owns the property at 6480 Pickney Road, which it leases or has leased to Camp Feel Good. It appears the land also is or was leased to quondam defendant Alternative Holistic Healing, LLC, but it is not clear if this lease was prior to, subsequent to, or concurrent with any other lease of the property. In any event, that fact does not appear to be relevant for purposes of the instant motion.

[5] Because plaintiff Safe Streets Alliance did not appeal the claims which were remanded by the Tenth Circuit for further consideration by this court, ***see Safe Streets Alliance v. Hickenlooper***, 859 F.3d 865, 881 n.4 (10th Cir. 2017), the only remaining plaintiffs in this lawsuit are the individual property owners, Phillis Windy Hope Reilly and Michael P. Reilly.

[6] Count I implicates all three remaining defendants. Count V implicates only Mr. Walton, together with other quondam defendants.

3

summary judgment as to all counts remaining against them.[7]

RICO provides, *inter alia*,

> [i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(c).  "Any person injured in his business or property by reason of a violation" of this or the other substantive provisions of section 1962 "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  Thus, to establish their RICO claims, plaintiffs must prove "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury."  ***Safe Streets Alliance v. Hickenlooper***, 859 F.3d 865, 881 (10th Cir. 2017).

Regarding the first element of that test, a violation of section 1962(c) of RICO requires proof defendants "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.* at 882 (citation and internal quotation marks omitted).  Defendants dispute only one of these elements: whether plaintiffs can show the existence of a RICO "enterprise."  Thus, I examine that question first.

An "enterprise" under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact

---

[7] Counts II and VI of the Amended Complaint allege violations of section 1962(d) of RICO, which makes unlawful a conspiracy to violate any of the other subsections of section 1962.  It is not clear whether plaintiffs persist with these claims.

although not a legal entity." 18 U.S.C. § 1961.  This definition encompasses informal associations as well as formal legal entities, and plaintiffs have alleged both types of enterprises in Counts I and V, respectively.  With respect to Count V,[8] which alleges that 6480 Pickney, LLC, is the enterprise, there is no dispute that this Colorado limited liability corporation is a "legal entity" and thus may constitute a RICO "enterprise."  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001).

      Defendants protest, however, that 6480 Pickney, LLC, cannot legally be considered an enterprise because it is merely an alter ego of Mr. Walton, and thus lacks the requisite "distinctness" between the RICO defendant and the RICO enterprise.[9]  *Id.*, 121 S.Ct. at 2090.  Aside from the oddity of a party seeking to pierce his own corporate veil, Mr. Walton presents absolutely nothing to substantiate this assertion.  Instead, he appears to be under the impression this conclusion is self-evident because he is the sole member of 6480 Pickney, LLC.  Yet in the absence of proof otherwise, "the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner."  *Id.* at 2091.  "After all, incorporation's basic purpose is to create a distinct legal entity[.]"  *Id.  See also National Labor Relations Board v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993) ("[A] corporation will

---

[8]  To reiterate, Mr. Walton is the only remaining defendant implicated by Count V.

[9]  To the extent plaintiffs suggest it was defendants' burden to plead that the entities were not alter egos of Mr. Walton, they are mistaken.  The legal separateness of a duly incorporated entity is presumed; the burden to prove otherwise lies with the party seeking to establish that the corporate form is a mere fiction, in this case, defendants.  *See* **Fletcher Cyclopedia of the Law of Corporations** § 41.28 (Sept. 2017); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimatec*, 529 F.3d 371, 379 (7th Cir. 2008) (applying Illinois law).

5

be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears.") (citation and internal quotation marks omitted).  Because "[d]isregarding the corporate form is a drastic remedy," the court will pierce the corporate veil "only reluctantly and cautiously."  **Skidmore, Owings & Merrill v. Canada Life Assurance Co.**, 907 F.2d 1026, 1027 (10th Cir. 1990).  Certainly, Mr. Walton has not met his burden to overcome that reluctance here.

Even if this were not the case, the Tenth Circuit has determined already that defendants' argument is irrelevant to the association-in-fact enterprise alleged in Count I to have existed between Mr. Walton, his entities, and other defendants who have now been dismissed from this lawsuit.  **Safe Streets**, 859 F.3d at 883.  **See** 18 U.S.C. § 1961(4) (RICO "enterprise" includes "any . . . group of individuals associated in fact although not a legal entity").  An association-in-fact enterprise

> is a group of persons associated together for a common purpose of engaging in a course of conduct. Such an entity "need not have a hierarchical structure or a 'chain of command. . . . .  For it to exist requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

**Safe Streets**, 859 F.3d at 882-83 (citations and internal quotation marks omitted). Defendants stipulated they agreed with other parties to build a marijuana cultivation facility at 6480 Pickney Road for the purpose of growing recreational marijuana. (**Scheduling Order** ¶¶ 4.5-4.7 at 5.)  Mr. Walton and one of his former co-defendants applied for a license to establish a facility at that location, with the intention of leasing

that facility for the purpose of cultivating marijuana. (**Motion App.** at 11-17, 65.)[10] Recreational marijuana, in fact, has been cultivated continuously at the facility since early 2016. (**Scheduling Order** ¶ 4.8 at 6.) These undisputed facts are sufficient to establish the requirements of purpose, relationship, and longevity necessary to state the existence an association-in-fact enterprise. *See Safe Streets*, 859 F.3d at 883.

Moreover, it is clear the enterprises alleged in both counts affect interstate commerce. *See RJR Nabisco, Inc. v. European Community*, – U.S. –, 136 S.Ct. 2090, 2106, 195 L.Ed.2d 476 (2016). *See also Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (noting term "affecting interstate or foreign commerce" conveys Congress's intent to exert its full power under the Commerce Clause). The Tenth Circuit has determined as much already. *Safe Streets*, 859 F.3d at 883 ("Cultivating, distributing, and selling marijuana . . . undisputedly affects interstate commerce."). Even if I were inclined to disagree – and I am not – this determination constitutes law of the case and therefore is binding on me. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). Moreover, given the well-established Supreme Court precedent establishing that marijuana grown for purely home consumption sufficiently affects interstate commerce to come within the power of Congress to regulate through the Controlled Substances Act ("CSA"), *see*

---

[10] In a somewhat opaque argument, defendants suggest quondam defendants, Jason and Joseph Licata, abandoned any interest in the property or the marijuana grow license and were uninvolved in the cultivation of marijuana under Mr. Walton's license. Although a party cannot be liable for the conduct of a conspiracy once he has withdrawn therefrom, *see United States v. Harris*, 695 F.3d 1125, 1136-37 (10th Cir. 2012), plaintiffs' argument is factually inaccurate. The Licatas participated in the venture through July 2016, at least half a year after the facility became operational. Moreover, as part of buying out the Licatas' interest, Mr. Walton agreed to pay them in part with marijuana grown at the facility, and they received deliveries of marijuana from the facility as recently as September 2017. (**See Reply App.** at ¶¶ 2.c. & 2.d. at 251-252, 254-255.) Moreover, as discussed more fully *supra*, the fact of the Licatas' withdrawal *vel non* is irrelevant, as the evidence shows Mr. Walton and his associated legal entities agreed between themselves and with other former defendants to pursue the venture.

*Gonzales v. Raich*, 545 U.S. 1, 18-19, 125 S.Ct. 2195, 2206-07, 162 L.Ed.2d 1 (2005), it is ludicrous for defendants to suggest their commercial grow operation does not likewise affect interstate commerce.

As for the remaining elements of proof of a violation of section 1962(c), defendants offer no countervailing evidence or argument, and those elements are easily satisfied. "Racketeering activity" under RICO consists of "dozens of state and federal offenses, known in RICO parlance as predicates," including most specifically for present purposes, "any offense involving . . . drug-related activity that is 'punishable' under federal law." *RJR Nabisco*, 136 S.Ct. at 2096. As the Tenth Circuit already determined in this case, "cultivating marijuana for sale . . . is by definition racketeering activity." *Safe Streets Alliance*, 859 F.3d at 882. *See* 18 U.S.C. § 1961(1)(D) (racketeering activity includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance"). *See also* 21 U.S.C. § 802(16) (classifying marijuana as a controlled substance under the CSA).

Defendants stipulated that the facility at 6480 Pickney Road is used to cultivate marijuana. (*See* **Scheduling Order** ¶ 4.8. at 6 [#181], filed August 22, 2017.) Mr. Walton testified also that the marijuana manufactured at the facility is sold to licensed marijuana businesses in Colorado. (**Motion App.** at 79.) Because the cultivation and sale of marijuana remain illegal under the CSA, there can be no genuine dispute of material fact that defendants' activities meet the statutory definition of racketeering activity.

Next, a "pattern" of racketeering activity is established by proof of "a series of related predicates that together demonstrate the existence or threat of continued

criminal activity." **RJR Nabisco**, 136 S.Ct. at 2096-97.[11]  "It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle," as well as the actuality or threat of continued criminal activity, which establishes the necessary pattern.  **H.J. Inc. v. Northwestern Bell Telephone Co.**, 492 U.S. 229, 238-39, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).[12]  "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." **Id.**, 109 S.Ct. at 2901 (citation and internal quotation marks omitted).  Continuity may be shown where "the predicates are a regular way of conducting defendant's ongoing legitimate business[.]" **Id.** at 2902.

Both these elements are satisfied factually in this case.  Defendants have cultivated and sold marijuana at the facility continuously since February 2016. (**Scheduling Order** ¶ 4.8 at 6; **see Motion App.** at 78-80.)  Each act of cultivation and sale constitutes a separate violation of the CSA and therefore a predicate RICO offense.  These acts are related to one another in type and purpose.  Moreover, defendants acknowledge the cultivation and sale of marijuana is their "regular way of doing business." (**See Motion App.** at 49 (request for admission No. 9), 54 (answer to same).)  Defendants offer no countervailing argument, much less any evidence, to create a genuine dispute of material fact as to this aspect of establishing a RICO

---

[11] More specifically, plaintiffs must show at least two acts of racketeering activity occurring within ten years of one another.  18 U.S.C. § 1961(5).

[12] As the Supreme Court acknowledged, while "[f]or analytic purposes these two constituents of RICO's pattern requirement must be stated separately, . . . in practice their proof will often overlap." **H.J. Inc.**, 109 S.Ct. at 2901.

violation.

Nor do defendants dispute the clear evidence that they "conduct or participate, directly or indirectly, in the conduct of [6480 Pickney Road's] affairs." 18 U.S.C. § 1962(c). While plaintiffs must show defendants participate in the operation or management of the enterprise, *see Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993),[13] it is sufficient to show "that an enterprise member played some part – even a bit part – in conducting the enterprise's affairs," *George v. Urban Settlement Services*, 833 F.3d 1242, 1252 (10th Cir. 2016).

The record is replete with evidence establishing that Mr. Walton holds himself out as, variously, the "sole member and manager of 6480 Pickney LLC" (**Scheduling Order** ¶ 4.2 at 4); the "owner and sole manager" of Camp Feel Good, LLC (*id.*); and the "General Manager" of Alternative Holistic Healing during the time it operated the facility (**Motion App.** at 109, 111). He acknowledges he controls both 6480 Pickney, LLC, and Camp Feel Good, LLC. (**Scheduling Order** ¶ 4.2 at 4.) He executed leases of the property on behalf of 6480 Pickney, LLC, authorizing CannaCraft, LLC (another entity which he created and purported to represent in that transaction) to cultivate marijuana on the property. (**Motion App.** at 57-58.) Defendants further acknowledge they agreed to work together to develop the property for marijuana cultivation, construct a facility for that purpose, and secure the licenses necessary to operate the facility. (**Scheduling Order** ¶¶ 4.6 & 4.7.at 5, 4.11 at 6.) The evidence therefore establishes without dispute

---

[13] In other words, a RICO defendant "do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise." *George v. Urban Settlement Services*, 833 F.3d 1242, 1251 (10th Cir. 2016). Thus, as the Tenth Circuit noted in this case, plaintiffs' prior attempt to make a RICO defendant of a contractor who merely delivered water to the marijuana grow operation was insufficient, without more, to make the contractor a participant in the alleged enterprise. *Safe Streets*, 859 F.3d at 884.

10

that defendants "worked in concert . . . toward their common aim of cultivating, distributing, and selling marijuana," which establishes their participation in the enterprise. *Safe Streets*, 859 F.3d at 883.

Accordingly, the evidence establishes all four parts required to show a violation of RICO, and plaintiffs thus are entitled to summary judgment as to the first element of their claims. However, with respect to the remaining elements – whether plaintiffs' business or property was injured and, concomitantly, whether defendants' violation was the cause of that injury, *see id.* at 882 – genuine disputes of material fact preclude summary judgment in favor of either party.[14]

Plaintiffs acknowledge issues of fact remain for trial as to their claimed injuries related to the noxious odors which allegedly emanate from defendants' facility.[15] Nevertheless, both parties maintain there is no dispute as to the diminution in the value (or in defendants' case, increase in value) of plaintiffs' land as a result of being located proximate to defendants' marijuana grow operation. While I agree defendants' evidence on this point is somewhat thin, this is not an issue I can be resolve as a matter of law. It will be for a jury to determine whether defendants' evidence establishes an appropriate benchmark for determination of the value of the land.

Nevertheless, I do concur with plaintiffs that defendants' attempt to materially alter the deposition testimony of their own valuation expert, Ivor Hill, through the

---

[14] On remand, the Tenth Circuit identified three types of injuries plaintiffs claim to have suffered as a result of the operation of the facility: (1) interference with their use and enjoyment of the land by recurring emissions of noxious odors from the facility; (2) diminution in value of their land as a result of these same odors; and (3) diminution in value of the land due to operation of a recreational marijuana grow in proximity to their land. *See Safe Streets*, 859 F.3d at 886-88.

[15] Defendants profoundly misunderstand the rules of evidence in suggesting the opinions of their expert somehow override or negate plaintiffs' lay opinions as to the strength and persistence of smells emanating from the facility.

submission of a purported "errata" sheet cannot be countenanced.  (**See Defendants' Experts** [*sic*] **Errata Sheet** [#222], filed June 25, 2018.)  During his deposition, Mr. Hill testified in no uncertain terms that the value of plaintiffs' land had diminished by $4,000 due to its location next to defendants' facility.  Undoubtedly recognizing the potential import of this testimony, plaintiffs' counsel called for a break; when the parties went back on the record, counsel said he had no more questions, and the deposition concluded.  By the errata sheet, Mr. Hill maintains counsel did not allow him to finish his answer to the question and that he had intended to qualify his statement by pointing out that plaintiffs' paid above market value for their property by some $10,000.  Thus, he asserts, the value of the land actually has increased by approximately $6,000.  (**See Errata** at 3.)

"An errata sheet . . . is a filing by which a party corrects technical, inadvertent errors[.]"  **Abernathy v. Wandes**, 713 F.3d 538, 544 n.5 (10th Cir. 2013), **cert. denied**, 134 S.Ct. 1874 (2014).  It also may be used to clarify a deponent's testimony.  **See Garcia v. Pueblo Country Club**, 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002) (citing **Rios v. Bigler**, 847 F.Supp. 1538, 1546-47 (D. Kan. 1994), **aff'd**, 67 F.3d 1543 (10th Cir. 1995)).  On the other hand, "[a] deposition is not a take home exam."  **Garcia**, 299 F.3d at 1242 n. 5 (10th Cir. 2002), and it is not appropriate to use an errata to attempt to materially alter the substance of deposition testimony previously given, **Abernathy**, 713 F.3d at 544 n.5; **BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.**, 422 Fed. Appx. 663, 666 (10th Cir. April 18, 2011).

The Tenth Circuit analyzes such suspect errata sheets under the standard used to evaluate sham affidavits.  While a court may not automatically disregard a contrary

affidavit, it will do so when the affidavit "constitutes an attempt to create a sham fact issue." **Franks v. Nimmo**, 796 F.2d 1230, 1237 (10th Cir. 1986).  The purpose for the rule is clear:  "[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting [evidence] contradicting his own prior testimony."  *Id.*  In determining whether an affidavit or errata transgresses this boundary, the court should consider

> whether the affiant [or deponent] was cross-examined during his earlier testimony, whether the affiant [or deponent] had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit [or errata] was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit [or errata] attempts to explain.

**Burns v. Board of County Commissioners of Jackson County**, 330 F.3d 1275, 1282 (10th Cir. 2003) (citation and internal quotation marks omitted).

      Consideration of these factors here leads inexorably to the conclusion that the errata should be stricken.  There is no evidence to suggest, and defendants do not contend, that any pertinent information was unavailable to Mr. Hill at the time of his deposition.  Indeed, it would be hard to credit that the price plaintiffs paid for their property is not a matter that was known, or at least knowable, previously, or that it would have been inadvertently omitted from Mr. Hill's expert opinion.

      It would further defy credulity to suggest the errata simply tries to clear up confusion on the part of Mr. Hill.  Having reviewed the videotape of the relevant portion of the deposition which plaintiffs submitted with their motion to strike, I find nothing therein to suggest Mr. Hill was prevented from further explaining or qualifying his rather unequivocal answers.  When counsel informed Mr. Hill he had no further questions, Mr.

Hill did not look consternated or appear in any way as if he had more to say on the matter of the valuation of plaintiffs' property. Instead, appearing not in the least surprised or concerned (perhaps even relieved), he smiled and thanked counsel, leaned back in his chair, and removed his microphone, seeming to all appearances as if he were done with his testimony and satisfied with his answers.[16]

Moreover, rather than clarifying Mr. Hill's prior testimony, the errata materially alters his conclusions. Indeed, it essentially contradicts his prior testimony, attempting to turn what Mr. Hill claimed was loss for plaintiffs into a win for defendants.[17] I refuse to countenance such legal legerdemain in the guise of an errata. Thus, I will grant plaintiffs' motion to strike that document and do not consider it as part of my determination that genuine disputes of material fact as to damages remain for determination by a jury.

Finally, although plaintiffs seek to avoid the issue of damages altogether by arguing they are entitled to a permanent injunction in this case, I find that request premature. While I am not entirely convinced private parties such as these plaintiffs are entitled to injunctive relief at all under RICO,[18] I am emphatically not persuaded – based

---

[16] These factors overshadow any concern based on defense counsel's absence from the deposition. *See Martinez v. Barnhart*, 177 Fed. Appx. 796, 800 (10th Cir. April 25, 2006). Counsel for defendant was absent by his own choice and remained available by telephone, a lifeline Mr. Hill did not appear to feel the need of at the time he gave his deposition.

[17] That this belated conclusion appears nowhere in Mr. Hill's expert report further buttresses my conclusion that the errata must be stricken.

[18] The issue has presented diametrically opposed viewpoints among the federal circuits which have considered it. **Compare Religious Technology Center v. Wollersheim**, 796 F.2d 1076, 1082-89 (9th Cir. 1986), **cert. denied**, 107 S.Ct. 1336 (1087) (finding no such private right to injunctive relief), **with Chevron Corp. v. Donziger**, 833 F.3d 74, 137-40 (2nd Cir. 2016), **cert. denied**, 137 S.Ct. 2268 (2017) (recognizing right to private injunctive relief). The Tenth Circuit has emphatically declined to rule on the issue, *see Federal Deposit Insurance Corp. v. Antonio*, 843 F.2d 1311, 1313 n.1 (10th Cir. 1988), and the Supreme Court has not found occasion to weigh in either, *see Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 411, 123 S.Ct. 1057, 1069, 154 L.Ed.2d 991 (2003). If this issue

on plaintiffs' citation to a nearly 45-year old Seventh Circuit case[19] – that if they are so entitled, they are not required to show the traditional four elements necessary to substantiate a permanent injunction, including, most particularly, irreparable harm. ***Jackson v. Rohm & Haas Co.***, 2009 WL 948741 at *4 (E.D. Pa. March 20, 2009), *aff'd*, 366 Fed. Appx. 342 (3rd Cir. Feb. 22, 2010). **See also, e.g.**, ***A.T.N. Industries, Inc. v. Gross***, 632 Fed. Appx. 185, 191 (5th Cir. Dec. 7, 2015); ***Sung Chul Lee v. Choi***, 140 Fed. Appx. 299, 300 (2nd Cir. July 25, 2005); ***James v. Hung***, 2017 WL 4925516 at *1 (N.D. Ga. April 17, 2017); ***Fasi v. HSBC Bank USA, N.A.***, 2013 WL 50434 at *2 (D. Colo. Jan. 3, 2013). Thus, until plaintiffs establish they were damaged in fact as a proximate cause of defendants' RICO violation – either by noxious odors or in the diminution in value of their property, or both – they *per force* cannot meet this burden.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That plaintiffs' **Motion for Summary Judgment on Counts I and V** [#219], filed June 7, 2018, is granted in part and denied in part, as follows:

    a. That the motion is granted insofar as it seeks summary judgment on the issue whether defendants' violated RICO, 18 U.S.C. § 1962(c), as alleged in Counts I and V of the Second Amended Complaint; and

    b. That in all other respects, the motion is denied;

---

becomes relevant in the future, I anticipate requiring the parties to further and more fully brief it to assist my determination.

[19] Moreover, in that case, the court was considering whether *the government* was entitled to a statutory injunction under section 1964(b), which is not implicated in this case. **See *United States v. Cappetto***, 502 F.2d 1351, 1358-59 (7th Cir. 1974), ***cert. denied***, 95 S.Ct. 1121 (1975). **See also *Jackson***, 2009 WL 948741 at *4 (noting this distinction).

2. That **Defendants' Motion for Summary Judgment Pursuant to FRCP 56** [#220], filed June 7, 2018, is denied; and

3. That plaintiffs' **Motion To Strike Errata Sheet** [#225], filed July 11, 2018, is granted, and **Defendants' Experts** [*sic*] **Errata Sheet** [#222], filed June 25, 2018, is stricken.

Dated August 1, 2018, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge