Civil Action No. 15-cv-00349-REB-SKC

SAFE STREETS ALLIANCE, et al.,

    Plaintiffs,

v.

ALTERNATIVE HOLISTIC HEALING, LLC, d/b/a Rocky Mountain Organic, et al.,

    Defendants.

**ORDER DENYING DEFENDANT'S [sic] AMENDED MOTION TO DISQUALIFY THE PLAINTIFF'S [sic] EXPERT PURSUANT TO FRE 702, AND FRE 703 MOTION FOR THE COURT TO APPOINT AN EXPERT(S) PURSUANT TO 104 TO ADDRESS THE SOUNDNESS OF PLAINTIFF'S [sic] EXPERT'S METHODOLOGY**

**Blackburn, J.**

The matter before me is **Defendant's [sic] Amended Motion To Disqualify the Plaintiff's [sic] Expert Pursuant to FRE 702, and FRE 703 Motion for the Court To Appoint an Expert(s) Pursuant to 104 [sic] To Address the Soundness of the Plaintiff's [sic] Expert's Methodology** [#217],[1] filed June 1, 2018. I deny the motion.[2]

Plaintiffs in this case are landowners who allege defendants' operation of a commercial recreational marijuana grow operation adjacent to their land violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964(c) & (d). I already have granted summary judgment in favor of plaintiffs on the

---

[1] "[#217]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] I previously denied that portion of the motion which also requested a stay of the dispositive motion deadline. (**See Minute Order** [#218], filed June 1, 2018.)

issue whether defendants' actions violate RICO.  (*See* **Order Re: Summary Judgment Motions** ¶ 1.a. at 15 [#230], filed August 1, 2018.)  Remaining for consideration by the jury are the other two elements of a successful RICO claim: (1) whether plaintiffs suffered injury to their business or property; and (2) whether defendants' violation was a cause of that injury.  *See Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017).

In support of those determinations, plaintiffs proffer the expert testimony of Stephen Billings, an associate professor of real estate at CU-Boulder who holds a doctorate in urban economics and applied econometrics.  To estimate the impact of defendants' operation on plaintiffs' property, he has performed a meta-analysis of existing literature on land uses which he posits would produce noises and smells comparable to what properties located near a commercial marijuana grow might experience.  Based on that analysis, he concludes plaintiffs' median estimated depreciation on their three properties is slightly more than $24,000.

Defendants seek to preclude Dr. Billings from testifying as an expert witness in the trial of this case.  Their motion is governed by Rule 702 of the Federal Rules of Evidence, which provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  As interpreted by the Supreme Court, Rule 702 requires an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue.  ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.***, 360 F.3d 1206, 1210 (10th Cir. 2004).  An expert may be qualified by "knowledge, skill, experience, training, or education" to offer an opinion on an issue relevant to the case.  FED. R. EVID. 702(a).  *See also **103 Investors I, L.P. v. Square D Co.***, 470 F.3d 985, 990 (10th Cir. 2006).  An expert opinion is reliable when it is based on sufficient facts or data, employs a methodology generally deemed reliable in the expert's field, and properly applies such methods to the facts of the case.  *See* FED. R. EVID. 702(b), (c), & (d); ***United States v. Crabbe***, 556 F.Supp.2d 1217, 1222-23 (D. Colo. 2008).

Guided by these principles, I have broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible.  ***Truck Insurance Exchange***, 360 F.3d at 1210; ***Smith v. Ingersoll-Rand Co.***, 214 F.3d 1235, 1243 (10th Cir. 2000).  The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  ***Goebel v. Denver and Rio Grand Western Railroad Co.***, 346 F.3d 987, 992 (10th Cir. 2003) (quoting ***Kumho Tire***, 119 S.Ct. at 1176).  Generally, "rejection of expert testimony is the exception rather than the rule."  ***United States v. Nacchio***, 519 F.3d 1140, 1154 (10th Cir. 2008), ***vacated in part on rehearing en banc***, 555 F.3d 1234 (10th Cir. 2009).  *See also* FED. R. EVID.

3

702 (2000 Advisory Comm. Notes).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 113 S.Ct. at 2798.

Defendants' motion is long on argument, but woefully short on authority or analysis.  Indeed, it barely satisfies the requirement of D.C.COLO.LCivR 7.1(d) that "a motion involving a contested issue of law shall . . . be supported by a recitation of legal authority in the motion."  Nevertheless, to the extent defendants advance discrete, intelligible arguments, they suggest Dr. Billings should be precluded from testifying because (1) he is not qualified to offer opinions on the subject of land valuation; (2) his methodology is not generally accepted; and (3) his opinions are unreliable and irrelevant.  None of these arguments has any traction.

Defendants' contention that Dr. Billings is not qualified to testify as to the alleged diminution in value of plaintiff's land because he is not an expert in land valuation is specious.  Nothing in the federal rules suggests that only one type of training or experience qualifies an expert to offer an opinion on a particular topic.  With respect to land value in particular, a landowner herself may offer testimony as to the value of her land as a "skilled witness."  *See* FED. R. EVID. 702, Adv. Comm. Notes, 1972 Amendments.

Although Dr. Billings is not a land appraiser, he has education and experience in applied economics with a focus on real estate.  He has studied and written on a variety of topics examining different housing markets and the valuation of housing in relation to

4

various non-structural attributes of the location or condition of the property. Such considerations are the basis of the hedonic price method ("HPM"), a particular way of assessing the value of a piece of property which forms the theoretical foundation of the papers Dr. Billings reviewed in formulating his opinions in this case.[3] Dr. Billings has experience in the use and application of this method. There thus is no basis on which to conclude Dr. Billings is not qualified to offer the opinions stated in his expert report. Any deficiencies defendants perceive in the fact that he is not a licensed real estate appraiser are matters that go to the weight, not the admissibility, of his testimony, and can be thoroughly explored on cross-examination.

Although defendants also claim Dr. Billings's methodology is "not commensurate with other experts and professionals in the field," they present nothing to substantiate this statement, which appears blatantly untrue in any event. Indeed, defendants do not appear to be questioning the validity *vel non* of HPM,[4] but rather claiming that a marijuana grow is *sui generis* and therefore not comparable to landfills or airports, the two land uses to which Dr. Billings analogized defendants' operation. That assertion is not self-evident, however, and defendants offer not a shred of proof to buttress their bare assertions that, for example, unlike a landfill, their operation "contains odor control

---

[3] HPM teaches that the sales price of a property is a factor of the structural attributes of the property combined with the attributes of its location. If structural attributes are controlled for, the remainder of the property's price must relate to these location attributes.

[4] To the extent defendants are so contending, here again they fail to substantiate that argument in any particular. The contrary opinions of their own expert merely highlight that genuine disputes of material fact remain for trial to a jury. *See* **FED. R. EVID.** 702, Adv. Comm. Notes, 2000 Amendments (Rule 702 "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other").

5

systems" and "does not vent to the outside."[5] That the jury ultimately may find such differences compelling provides no basis for precluding Dr. Billings from testifying in the first instance.

Finally, and as an overarching theme running throughout their motion, defendants challenge the relevance and reliability of Dr. Billings's opinions. In one iteration, this argument suggests Dr. Billings's analysis is fatally flawed because it considers studies of the impacts of various land uses on the valuation of residential properties, whereas plaintiffs' land is zoned for agricultural use. This argument ignores evidence that, regardless of local zoning ordinances, plaintiffs maintain a residence on their land and that such use is consistent with the protective covenants applicable to their properties.[6] Regardless, though Dr. Billings's opinions are based on allegedly imperfect comparisons between residential and agricultural properties, or between a marijuana grow operation and the commercial uses which were used as comparators, those discrepancies affect only the weight of his opinions, not their admissibility.

That Dr. Billings did not visit the site and relied on plaintiffs' descriptions of conditions on the land provides no justification for precluding his testimony either. Indeed, the rules specifically contemplate that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

---

[5] While I suspect such evidence may exist somewhere in the record of this case, I am neither required nor inclined to scour the record of this case in search of it, especially where defendants have failed to apprise me of where to even begin to look. ***See Gross v. Burggraf Construction Co.***, 53 F.3d 1531, 1546 (10th Cir. 1995); ***Buhendwa v. University of Colorado at Boulder***, 2005 WL 2141581 at *3 (D. Colo. Aug. 22, 2005), ***aff'd***, 214 Fed. Appx. 823 (10th Cir. 2007). ***See also United States v. Dunkel***, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[6] The fact that plaintiffs moved to the area after Colorado legalized *medical* marijuana might be relevant if they were pursuing a state law nuisance claim, but they are not.

**FED. R. EVID.** 703.  *See also United States v. Chapman*, 839 F.3d 1232, 1238 (10th Cir. 2016).  Thus, "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 692, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993).

Lastly, although the title of defendants' motion appears to ask the court to appoint its own expert to vet Dr. Billings's methodology, that issue is not discussed at all in the body of the brief.  Nevertheless, to the extent defendants have made such a request, I reject it.  Although Fed. R. Evid. 706 allows the court to appoint its own expert, that discretionary authority is reserved for "exceptional cases that present unwieldy, complex, or technical issues or when there is a need for an impartial, independent assessment of a disputed issue."  *McClendon v. City of Albuquerque*, 2015 WL 13667177 at *4 (D.N.M. Oct. 13, 2015) (citation and internal quotation marks omitted).  This case presents no such circumstances.  *See also Duran v. Curry County Adult Detention Center*, 2013 WL 12172042 at *11 (D.N.M. Aug. 30, 2013) ("The appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues."), *aff'd*, 663 Fed. Appx. 684 (10th Cir. Oct. 18, 2016) (citation and internal quotation marks omitted).

**THEREFORE, IT IS ORDERED** that **Defendant's** [sic] **Amended Motion To Disqualify the Plaintiff's** [sic] **Expert Pursuant to FRE 702, and FRE 703 Motion for the Court To Appoint an Expert(s) Pursuant to 104** [sic] **To Address the**

**Soundness of the Plaintiff's** [sic] **Expert's Methodology** [#217], filed June 1, 2018, is denied.

    Dated August 14, 2018, at Denver, Colorado.

                                             **BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge